Defendant-appellant, Kelly Moran, appeals from a judgment of the Franklin County Court of Common Pleas finding him to be a sexual predator pursuant to R.C. Chapter 2950. Defendant assigns a single error:
 The trial court erred in admitting hearsay evidence during the sexual predator hearing.
Because any error in admitting the hearsay testimony of James F. Lanfear was harmless, we affirm.
By indictment filed December 29, 1978, defendant was charged with twenty counts of aggravated robbery, attempted rape, kidnapping, attempted kidnapping, and aggravated burglary. Following a no contest plea to one count of rape, one count of kidnapping, and one count of aggravated robbery, defendant was found guilty and sentenced accordingly.
Subsequent to the enactment of R.C. Chapter 2950, defendant was brought before the common pleas court for a hearing to determine whether defendant is a sexual predator. By entry filed October 27, 1998, the trial court determined by clear and convincing evidence that defendant is a sexual predator pursuant to R.C. 2950.09(C) and the factors set forth in R.C.2950.09(B). In his appeal of that determination, defendant contends the trial court erred in allowing James Lanfear to testify in the sexual predator hearing to a conversation he had with a four-year-old who implicated defendant in the murder and sexual assault of her mother.
At the August 13, 1998 hearing to determine whether defendant is a sexual predator, the trial court heard testimony from the state's witness John Ross, a supervisor with the Adult Parole Authority and a former investigating probation officer with the parole authority. Having prepared a presentence investigation report concerning defendant, Ross testified to some of the details of the report, which was admitted into evidence.
The state also presented witnesses who had served as defendant's parole officers. Larry Thorne, a parole services supervisor, supervised defendant on parole from the time he was released in August 1987 until he went back into prison around June 1988. Thorne identified a June 2, 1988 "Alleged Parole Violation And Supervision Summary" which was admitted into evidence. Charles Remley, a parole program specialist for the Ohio Adult Parole Authority, was the parole officer to whom defendant ultimately was assigned after defendant's parole on February 23, 1993. On May 5, 1994, Remley wrote an "Alleged Parole Violation And Supervision Summary" noting defendant's failure to attend and complete a sex offender counseling program. The summary was admitted into evidence.
Defendant objects to none of the foregoing evidence. Instead, defendant's assignment of error is directed to the testimony of James Lanfear, who testified over objection that in investigating the death of a female African American found strangled and nude in a bathtub on the second floor of an apartment in Columbus, he spoke with the victim's four-year-old daughter. Lanfear testified that the child stated she and her mother had come home from shopping or visiting, and as they walked in the door defendant jumped out of the closet and dragged her mother upstairs. The child said she heard fighting upstairs, and loud banging against the walls. Defendant admitted only that he had a relationship with the victim; that there was some contact between them. No one was charged in the murder because of the age of the only witness.
In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court not only found R.C. 2950.09(B)(1) constitutional, but also addressed the type of evidence appropriate in a sexual predator hearing, holding that "the Ohio Rules of Evidence do not strictly apply to sexual predator determination hearings. Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge." Id. at 425. Reliable hearsay bears an indication that its truth is reasonably probable. State v. Baughman (May 4, 1999), Franklin App. No. 98AP-929, unreported (1999 Opinions 1032, 1035), citing Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571.
Under those parameters, the testimony of James Lanfear, who related the information gathered from the four-year-old daughter of a homicide victim, does not meet the standards for reliability set forth in Cook. Even if in some circumstances the information gathered from a four-year-old child may be deemed reliable, nothing in this record indicates that the child with whom Lanfear spoke is a reliable source of information. Accordingly, the trial court erred in allowing that testimony to be presented in support of the state's contention that defendant is a sexual predator.
Nonetheless, the record contains ample evidence to allow the trial court to conclude by clear and convincing evidence that defendant is a sexual predator. In addition to the no contest plea to one count of rape, the presentence investigation report prepared by John Ross indicates interviews of the various victims set forth in the indictment. In the report, Patricia Kovall identified defendant as the person who abducted her at gun point, robbed her and raped her on July 26, 1978; Kathryn Perry identified him as the person who kidnapped and robbed her at gun point and forced her to fellate him July 31, 1978; Pearl Burke identified him as the person who kidnapped and robbed her at gunpoint and attempted to rape her on August 11, 1978; Brenda Helmbright identified him as the person who raped her at gunpoint on August 15, 1978; and Elizabeth Ross identified him as the person who kidnapped and robbed her at gunpoint, and attempted to rape her on August 30, 1978. Throughout the investigation, defendant indicated no remorse for the acts for which he was convicted.
According to the report, defendant was examined on November 28, 1978, by Dr. Ludwig Gore, M.D., a psychiatrist, who found no mental disorder in defendant but suspected defendant had a deep-seated hostility toward females, perhaps arising out of his parents' divorce. He described defendant as immature, narcissistic, and hedonistic, and noted that because of defendant's lack of insight and his denial of wrongdoing, defendant's future behavior could not be predicted. The report also indicates defendant was examined by John Wells, a psychologist, who noted the existence of some anger and resentment which could produce aggressive and antisocial activities. Wells stated defendant was emotionally immature and guarded, with a negative attitude toward his mother and women in general. Wells found defendant feels inadequate around women and sees them as objects to be manipulated.
The trial court also had the June 2, 1988 "Alleged Parole Violation And Supervision Summary," which detailed an incident on May 24, 1988, in which defendant allegedly violated his parole by assaulting a woman and attempting to engage in sex with her. The summary further indicates that an evaluation was performed by Dr. Daniel Barna on August 26, 1987, shortly after defendant was paroled. Dr. Barna recommended that defendant be required to actively participate in a sexual offender program. The report concludes that:
 * * * Moran assaulted and probably attempted to forcibly have sex with a woman who he had given a ride. It is interesting to note that this incident is very similar to several of the rapes for which the subject was originally indicted. * * * Unfortunately, the victim, who may be a prostitute, has so far refused to come forward. Nevertheless, the story [the victim] told the police rings true while Moran's explanation sounds questionable. * * *
 It is also disturbing that subject seems to have offended again in spite of years of therapy both in and outside of prison. In view of the seriousness of the violation and the probability that the subject is a threat to women in the community, a return to the institution as a Parole Violator is strongly recommended. (Alleged Parole Violation Supervision Summary at p. 6.)
While the hearing on the asserted violation resulted in a finding of probable cause to establish the assault violation, no probable cause was found on the attempted sexual activity, apparently due to the victim's refusal to testify.
Lastly, the record also contains the May 5, 1994 Alleged Parole Violation And Supervision Summary which indicates defendant ran from his assigned parole officer and parole officer Andrea Dean, did not follow through on his parole agreement to keep the parole officer informed of his whereabouts, and failed to continue attending sex offender counseling "which is essential to his success." (1994 Summary, p. 3.) In recommending that the subject's parole be violated and defendant be returned to the proper state correctional facility for extended incarceration, the report states, "[h]opefully, he can be incarcerated at a facility that offers sex offender counseling and attendance should be mandatory." Thereafter, however, defendant was found guilty on new charges relating to aggravated trafficking, drugs and drug abuse. Accordingly, the parole officer closed the case on defendant.
The evidence thus reflects defendant's deep-seated hostility to women, and a continuing propensity to act on that hostility. In almost every instance, defendant is recommended for continuing sex offender counseling, which defendant failed to complete according to the most recent summary of parole violations.
R.C. 2950.09 defines "sexual predator" as a person who has been convicted of or pleaded guilty to a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Given the evidence presented to the trial court, and excluding the testimony of James Lanfear which the trial court admittedly relied on to a lesser degree, the record nonetheless contains clear and convincing evidence which supports the trial court's determination that defendant is a sexual predator. Accordingly, we overrule defendant's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
BRYANT, KENNEDY and DESHLER, JJ., concur.