OUR PLACE, INC., APPELLEE, *v.* OHIO LIQUOR
CONTROL COMMISSION, APPELLANT.

[Cite as *Our Place, Inc. v. Ohio Liquor Control
Comm.* (1992), 63 Ohio St.3d 570.]

(No. 91–960—Submitted February 26, 1992—Decided May 6, 1992.)

*Rishel, Myers & Kopech* and *Marc E. Myers,* for appellee.

*Lee I. Fisher,* Attorney General, *Chester T. Lyman, Jr.,* and *Kurt O. Gearhiser,* for appellant.

---

WRIGHT, J. The issue before us is whether the court of appeals was correct in reversing the judgment of the trial court sustaining the order of the commission. An appeal from an administrative agency in Ohio is governed by R.C. 119.12, which states in pertinent part: "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." The court of common pleas is restricted to determining whether the order is so supported.

The evidence required by R.C. 119.12 can be defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.[1] (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.[2] (3) "Substantial" evidence is evidence with some weight; it must have importance and value.[3]

In this case the Director of the Department of Liquor Control denied the permit application on two grounds. First, the application was denied based on R.C. 4303.292(B)(1), because the location of the proposed permit establishment would "substantially and adversely affect or interfere with the normal, orderly conduct of the affairs" of the private school and the day-care center located nearby. Second, the application was denied based on R.C. 4303.-292(A)(2)(c), because the issuance of a permit for the proposed location would result in "substantial interference with public decency, sobriety, peace or good order" of the neighborhood. The commission sustained the director's order.

---

1. The American Heritage Dictionary (1981) 1098, defines "reliable" as: "That can be relied upon; dependable."

2. The American Heritage Dictionary (1981) 1043, defines "probative" as: "1. Serving to test, try, or prove. 2. Furnishing evidence or proof."

3. The American Heritage Dictionary (1981) 1284, defines "substantial" in part as: "Considerable in importance, value, degree, amount or extent."

If either of the grounds is supported by reliable, probative, and substantial evidence, then the commission's decision must be upheld.

The evidence consists in the main of the testimony of witnesses at the March 8, 1989 hearing. In opposition to the permit were Geraldine McCarley, Director of the East Cleveland Child Development Center located next door to the permit premises; Patricia Baker–Brown, Director of the Independent School located nearby; Selma Gamble from the East Cleveland Board of Education, who represented an elementary school and a high school located nearby; and two residents of the neighborhood, Zakee Rashid and Edward Durden.

McCarley testified that the proposed permit premises are next door to and share a driveway with the day-care center that she operates, and that having a bar at that location could endanger children using the day-care center and adjacent playground. Photographs show the driveway is on a hill and McCarley testified to her fear that drivers who have had a few drinks would have to negotiate the hill in winter with children coming and going. She testified that neighborhood children use the playground during the hours that the day-care center is closed. In addition, she indicated that enrollment at the day-care center would suffer if a bar were situated nearby.

Baker–Brown testified that the increase in general traffic in the area would not be in the best interests of her students. In addition, she said that a few children use "extended care"; they are cared for at the Independent School before school starts, and after school until 6:00 p.m. They must walk past the bar between the public school and the Independent School in order to do this.

Selma Gamble testified on behalf of the school board that a bar in the area would be too great a temptation for high school students, and would interfere with the school's ability to prevent drug problems among the students.

Zakee Rashid indicated that he owned property close to the proposed premises, and that he has frequently seen children from "dusk until dawn" in the playground at the day-care center. Edward Durden opined that a bar at the proposed location would contribute to general problems with young people in the area.

The testimony of witnesses opposing the permit, particularly that of McCarley, Baker–Brown and Gamble, indicates that there could be substantial interference with the operation of schools in the area. The evidence is reliable in that there is a reasonable probability that it is true. It is probative in that it bears directly on the issue of the location of the permit and its interference with the operation of the Independent School and the public schools. It is substantial in that it has weight and importance in deciding the issue at hand. The commission's decision was therefore based on reliable, probative, and

substantial evidence that the proposed permit location would interfere with the orderly conduct of schools in the area.[4]

As the commission had reliable, probative, and substantial evidence for denying the permit under R.C. 4303.292(B)(1), we need go no further. However, the testimony of the witnesses in opposition to the permit also indicates that there could be substantial interference with public decency, sobriety, peace or good order in the neighborhood. The commission's rejection of the permit under R.C. 4303.292(A)(2)(c) is also supported by some reliable, probative, and substantial evidence. The court of common pleas committed no error in upholding the commission's order.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

---

4. An issue argued by the parties is whether location alone is sufficient to deny issuance of a new permit. The statute specifically states that "[t]he department of liquor control may refuse to issue * * * any retail permit issued under this chapter if it finds * * * [t]hat the place for which the permit is sought * * * [i]s so located with respect to the neighborhood that" issuance of the permit would cause specified harm (R.C. 4303.292[A][2][c]); and that "[t]he department of liquor control may refuse to issue * * * any retail permit issued under this chapter if it finds * * * [t]hat the place for which the permit is sought is so situated with respect to any school" that operation of the liquor establishment would adversely affect the school (R.C. 4303.-292[B][1]). This language makes clear that the location of proposed permit premises can be the only factor to be considered by the department in deciding not to issue a permit under this part of the statute.