OPINION
Appellant, Gayl M. Godsell-Stytz, appeals from the June 14, 2001 decision and judgment entry of the Franklin County Court of Common Pleas affirming the order of appellee the State Medical Board of Ohio, permanently revoking appellant's license to practice osteopathic medicine in Ohio. For the reasons that follow, we affirm the decision of the Franklin County Court of Common Pleas.
Appellant received her medical degree from Michigan State College of Osteopathic Medicine in 1981. Upon completing a one-year rotating internship at the Botsford General Hospital in Farmington Hills, Michigan, appellant worked in both emergency and family practice. In 1986, appellant suffered a ruptured appendix and underwent a number of surgical procedures. In January 1993, appellant was diagnosed with cancer, at which time she stopped practicing. Appellant testified that, because she was having terrible pain as a result of the cancer, she went to several treating physicians for prescribed pain medication, but the physicians denied her request because she was a physician. (Tr. 77.) Appellant testified that the physicians "flat out told me, they said, `We do not' — they flat out told me, `I do not want to be involved with the Board of Pharmacy. I do not want to be audited. I am not going to give you pain medicine. If I'm going to give you pain medicine, you're going to have to order it and you're going to get yourself in trouble, you're not going to get me in trouble.'" Appellant testified that, as a result of being denied the pain medication by the physicians, she self-prescribed the pain medication. Appellant ordered Meperidine, Halcion, Valium and Tylenol 4's.
In a letter dated July 14, 1999, the State Medical Board of Ohio ("Ohio Board") informed appellant that it proposed to take disciplinary action against her license to practice osteopathic medicine in Ohio based on the following facts and allegations: On July 20, 1994, the Michigan Board of Osteopathic Medicine and Surgery ("Michigan Board") filed an administrative complaint against appellant alleging that appellant did not have a current drug control license and that an audit of certain controlled substances purchased by appellant revealed that appellant was self-administering the drugs, and failed to maintain records of the controlled substances prescribed, dispensed and/or administered to herself. On January 2, 1996, appellant entered into a consent order and stipulation with the Michigan Board, which limited appellant's license to practice osteopathic medicine and surgery in Michigan by prohibiting appellant from obtaining, prescribing, or dispensing controlled substances for herself or her family members. Appellant was also placed on two years probation which required appellant to enter into and comply with the terms of a monitoring agreement with the Michigan Health Professionals Recovery Program ("HPRP").
On November 14, 1996, the Michigan Board issued an administrative complaint charging that appellant failed to comply with the 1996 consent order by failing to enter into a monitoring agreement with the HPRP and failing to be evaluated. On March 6, 1998, the Michigan Board filed an amended administrative complaint additionally charging appellant with the failure to comply with the 1996 consent order by failing to provide toxicology information, failing to update her assessment for chemical dependency, and failing to submit required documentation.
On June 10, 1998, appellant signed and submitted to the Ohio Board an application for renewal of her license to practice. By signing the application, appellant certified that the information she provided was true and correct. On her renewal application, appellant initially answered "yes" in response to if any disciplinary action had been taken or initiated against her in any state other than by the Ohio Board.[1]
On July 21, 1998, the Ohio Board requested that appellant provide an explanation for her affirmative response to question No. 5. On July 27, 1998, appellant sent a letter to the Ohio Board stating that her affirmative response was incorrect and that she had no disciplinary action taken against her. In fact, the Michigan Board's November 14, 1996 and March 6, 1998 complaints against appellant were new disciplinary actions initiated against appellant between 1996 and 1998 when she signed her renewal application.
On December 21, 1998, as part of the negotiations to settle the complaints filed against her, appellant submitted to the Michigan Assistant Attorney General copies of eight monthly urine drug screens for the period of May 1998 through December 1998. On January 25, 1999, through her counsel, appellant entered into a stipulation with the Michigan Board in which she did not contest the allegations of the November 14, 1996 and March 6, 1998 complaints, and offered into mitigation copies of the eight monthly urine drug screens ("urine drug screens"). On March 8, 1999, an administrative hearing was held where the January 1999 stipulation and the urine drug screens were entered into evidence. At that hearing, appellant testified, under oath, to the authenticity of the urine drug screens.
On March 17, 1999, the Ohio Board contacted the Attorney General's Health Professionals Division ("division") and informed the division that the urine drug screens submitted by appellant were fraudulent. On March 23, 1999, the Michigan Board filed a second amended administrative complaint against appellant alleging that she forged the urine drug screen report forms and that she lied under oath at the March 8, 1999 administrative hearing. On March 25, 1999, the Michigan Board issued an order of summary suspension, suspending appellant's license to practice, because the conduct appellant exhibited required emergency action to protect the health, safety, and welfare of the public. The order of summary suspension also required appellant to submit to a physical examination and chemical dependency evaluation.
On July 14, 1999, the Ohio Board summarily suspended appellant's license to practice, alleging that appellant violated R.C. 4731.22(B)(5) (publishing a fraudulent, deceptive, or misleading statement), R.C.4731.22(B)(10) (tampering with evidence), R.C. 4731.22(B)(12) (falsification), and R.C. 4731.22(B)(22) (limitation, revocation or suspension by another state violates Ohio laws). On March 29, 2000, at the request of appellant, a hearing was held before the Ohio Board. On May 18, 2000, the Ohio Board informed appellant of the Ohio Board examiner's report and recommendation to permanently revoke appellant's license to practice osteopathic medicine. On July 12, 2000, appellant attended the regular session meeting of the Ohio Board, whereby the Ohio Board unanimously voted to permanently revoke appellant's license to practice osteopathic medicine.
Appellant filed a timely appeal to the Franklin County Court of Common Pleas, alleging that the Ohio Board's order was not supported by reliable, probative, and substantial evidence, and that the order was not in accordance with law. On June 14, 2001, the trial court affirmed the decision of the Ohio Board. It is from this decision and judgment entry that appellant appeals, raising the following assignments of error:
 I. THE LOWER COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDER OF THE OHIO STATE MEDICAL BOARD REVOKING APPELLANT'S LICENSE BECAUSE THAT ORDER WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS NOT IN ACCORDANCE WITH LAW.
 II. THE LOWER COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDER OF THE OHIO STATE MEDICAL BOARD BECAUSE THAT ORDER WAS UNDULY HARSH IN LIGHT OF OTHER DISCIPLINARY CASES.
Appellant's two assignments of error are interrelated and will be discussed together. Appellant has appealed, pursuant to R.C. 119.12. R.C. 119.12 provides the following standard of review for the common pleas court:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
In Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the Ohio Supreme Court defined the evidence required by R.C. 119.12 as:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. [Fn. omitted.]
As an initial matter, we note that appellate review in this matter is limited. The reviewing trial court is bound to uphold an order of the board if it is supported by reliable, probative, and substantial evidence, and is in accordance with the law. R.C. 119.12; Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Our review, however, is even more limited than that of the trial court. "The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Id. at 621. Absent an abuse of discretion, we may not substitute our judgment for those of the medical board or trial court. Id.; see, also, Roy v. Ohio State Med. Bd. (1992), 80 Ohio App.3d 675, 680.
Under R.C. 4731.22(B), the board is authorized to "limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for" one or more listed violations. In general, if the trial court determines that the Board's finding of a violation is supported by reliable, probative, and substantial evidence, the trial court is "precluded from interfering or modifying the penalty which the [board] imposed, so long as such penalty is authorized by law." DeBlanco, at 202; see, also, Henry's Cafe, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233, paragraph three of the syllabus ("the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion."); but, see, Brost v. Ohio State Medical Bd. (1991),62 Ohio St.3d 218, 221 (a penalty will be reversed when there is evidence that the board felt constrained to invoke a particular sanction based upon an internal disciplinary guideline or other policy without considering any of the lesser sanctions provided in R.C. 4731.22[B]).
The issue before this court is to determine whether the trial court abused its discretion in affirming the Ohio Board's decision to permanently revoke appellant's license to practice osteopathic medicine. For the following reasons, we hold that it did not.
Appellant contends that the trial court abused its discretion in finding that the decision of the Ohio Board was supported by reliable, probative, and substantial evidence. The Ohio Board concluded that the consent order and stipulation of the Michigan Board, and the order of summary suspension issued by the Michigan Board, constituted a limitation, revocation, or suspension by the state of Michigan which would have also violated Ohio laws pursuant to R.C. 4731.22(B)(22).
The Ohio Board further concluded that the acts, conduct, and/or omissions of appellant in providing the forged urine drug screens, testifying under oath that she had the monthly urine drug testing, and indicating that she had no disciplinary actions between her 1996 and 1998 Ohio renewal applications constituted "publishing a false, fraudulent, deceptive, or misleading statement," in violation of R.C. 4731.22(B)(5). The Ohio Board additionally held that appellant's acts, conduct, and/or omissions also constituted a misdemeanor in the state of Ohio, pursuant to R.C. 2921.13 (falsification), regardless of the state in which the act was committed, as long as the act was committed in the course of appellant's practice; thereby being a violation of R.C. 4731.22(B)(12).
Additionally, the Ohio Board also determined that appellant committed a felony, tampering with evidence (R.C. 2921.12) which is a violation of R.C. 4731.22(B)(10), by forging the urine drug screen result form reports. Evidence and sworn testimony were presented to show that, at some point during appellant's employment at the Upper Valley Medical Center ("UVMC"), appellant had access to blank urine drug screen report forms, and that the forms appellant submitted to the Michigan Board were not authentic. Donald Anthony White, an employee of UVMC, testified that the initials on the form did not match any employee at UVMC, that UVMC had not used the forms for urine results since July 1997, and the lab had gone out of business in June 1998. (Tr. 48-58.) The urine drug screen forms that appellant submitted to the Michigan Board were for the period of May 1998 to December 1998.
Given the overwhelming evidence presented before the Ohio Board of appellant's acts, conduct and/or omissions, the trial court properly reviewed and considered the entire record, and concluded that the decision of the Ohio Board, in revoking appellant's license to practice osteopathic medicine, was supported by reliable, probative, and substantial evidence and was in accordance with law. R.C. 119.12. Accordingly, we conclude that the trial court did not abuse its discretion in affirming the decision of the Ohio Board to permanently revoke appellant's license to practice osteopathic medicine.
For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.
[1] Appellant initially answered "yes" to the following question on the application for renewal of licensure to practice osteopathic medicine and surgery: "At any time since signing your last application for renewal of your certificate have you: 5) `Had any disciplinary action taken or initiated against you by any state licensing board other than the State Medical Board of Ohio?'" (Notice of Opportunity for Hearing, dated July 14, 1999, at 3.)