OPINION
{¶ 1} Appellant, Nijmeh, Inc., d/b/a Jacob's Market, appeals from the decision of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("commission"), in which appellee denied renewal of appellant's liquor permit. Because we find no abuse of discretion, we affirm the decision of the trial court.
 {¶ 2} Appellant operates a market located at 1600 West Riverview Avenue in Dayton, Ohio, and holds a C-2-2X liquor permit, which allows for the sale of beer and wine for off-premises consumption. The Dayton City Commission filed an objection to appellant's application for renewal of its liquor permit for the years 2000-2001 and 2001-2002. After conducting a properly noticed hearing on the application, a hearing officer recommended to the Division of Liquor Control ("division") that it sustain the objection and deny appellant's renewal applications. The division later denied appellant's renewal applications for 2000-2001 and 2001-2002.
 {¶ 3} Appellant timely appealed this denial to the commission, which conducted a full evidentiary hearing on the matter. Subsequently, the commission affirmed the division's order denying the renewal. Appellant then timely appealed to the Franklin County Court of Common Pleas. The trial court issued a decision affirming the order of the commission. Appellant timely appealed to this court.
 {¶ 4} Appellant's sole assignment of error states:
The Franklin County Common Pleas Court abused its discretion in finding the Ohio Liquor Control Commission's decision was supported by reliable, probative and substantial evidence.
 {¶ 5} Under R.C. 119.12, when the trial court reviews an order of an administrative agency, the trial court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111. See, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280.
 {¶ 6} The trial court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof.'" Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, quoting Andrews at 280. In its review, the trial court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra.
 {¶ 7} An appellate court's review of an administrative decision is more limited than that of a trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, reh'g denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio noted: "* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion[.] * * * Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Id.
 {¶ 8} In the present case, the division based its refusal to renew appellant's liquor permit on the following grounds:
(1) The place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the renewal of the permit and operation thereunder by the applicant. R.C. § 4303.292(A)(2)(c).
(2) The applicant has operated its liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. § 4303.292(A)(1)(b).
The permit business is a beer and wine carryout located in a high crime area of Dayton. There have been 410 police calls to the premises between January, 1999 and August, 2000 for incidents involving drug activity, assaults, theft and intoxication.
Drug dealers and prostitutes loiter in front of the premises and stop and solicit individuals passing by in motor vehicles. Undercover Dayton police officers have made many narcotics purchases directly in front of the store leading to several arrests. The permit business has contributed to this drug trade by offering for sale items known to be utilized for drug use.
Customers of the carryout also loiter in front of the business and consume alcoholic beverages. These customers have been observed urinating on the side of the building and surrounding properties.
(3) The Division also denies and rejects the 2000-2001 and the 2001-2002 renewal applications for good cause. R.C. §§ 4303.271(A), 4301.10(A)(2). [sic] and O.A.C. § 4301:1-1-12(B).
(Appellant's brief, Appendix A.)
 {¶ 9} Pursuant to R.C. 4303.271, a permit holder is entitled to renewal of its liquor permit unless good cause exists to reject the renewal application. Marciano v. Ohio Liquor Control Comm., Franklin App. No. 02AP-943, 2003-Ohio-2023; In re Appeal of Mendlowitz (1967),9 Ohio App.2d 83, 86. The burden of proof is on the division to prove, by a preponderance of the evidence, good cause for the rejection of the renewal permit. Id.
 {¶ 10} Section 4303.292 of the Ohio Revised Code sets forth the grounds under which the division may deny a renewal application. That statute states in part:
(A) The division of liquor control may refuse to * * * renew * * * any retail permit issued under this chapter if it finds:
(1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten percent or more of its capital stock:
* * *
(b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
* * *
(2) That the place for which the permit is sought:
* * *
(c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant.
 {¶ 11} Appellant contends that the evidence before the commission was not reliable, probative or substantial as to any of the grounds cited by the division in support of its denial of appellant's renewal application. "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571. (Footnotes omitted.)
 {¶ 12} The evidence presented to the commission in the present case was as follows. Detective Michelle Moser of the Dayton Police Department testified that the Dayton police made more than 400 runs to the address of the permit premises between January 1, 1999 and September 2000. She identified as exhibits incident reports for each of these runs, and she stated that the calls were for instances of disorderly conduct, public intoxication, drugs, assaults, gambling, 9-1-1 calls, parking violations, burglaries in progress, loitering, robbery and shoplifting. She identified a separate exhibit consisting of police incident reports for the address of the permit premises for the years 1999 and 2000, and seven criminal convictions arising from these incidents. She stated that the activity in the incidents occurred or originated in or around Jacob's Market.
 {¶ 13} Five local residents testified that they travel by the store frequently. They testified to problems at the premises with drug dealing, prostitution, loitering, public intoxication, trash and public urination. Several witnesses stated they had witnessed drug transactions being conducted in front of or near the permit premises. One witness testified she had witnessed fighting on the permit premises, and had heard gunshots in front of the premises. Witnesses also testified that the store sold "drug paraphernalia," including glass pipes, rolling papers, "blunts" and "Chore Boy" (allegedly used for scrubbing crack cocaine).
 {¶ 14} A member of a local affordable housing organization testified that appellant's store is located approximately 100 feet from a school and approximately two blocks away from another school. She further testified that the drug dealing, loitering and trash at the permit premises affect children going to and from the nearby schools. Finally, she testified that the store is a detriment to the surrounding neighborhood and it impedes efforts to induce new residents to move into the area.
 {¶ 15} An employee of a business located adjacent to appellant's store described drug dealing, alcohol abuse, prostitution and litter at and around the permit premises. He stated that the drug and alcohol activity and litter extend to the property of his employer, and that his employer frequently sends its employees to go out and clean up the area. He stated that drug dealers frequently congregate in front of appellant's store, approach vehicles driving by and interfere with pedestrian traffic on the sidewalk. This witness added, "[i]f it was truly a grocery store providing for the needs of the community — bread, milk, butter and cereal — it would be an asset to the community. Primarily, it is a liquor store." (Tr. at 76.) This witness further stated that there had been no recent improvement in conditions at the store, and that a drug dealer had in fact approached him in front of the premises on the day before the hearing.
 {¶ 16} Appellant presented several witnesses who reside in the surrounding neighborhood. These witnesses testified that conditions around the store have improved in the past year and that the prior problems no longer exist. One witness, a local pastor, testified that appellant's store is clean and decent and that he has not witnessed any drug problems or loitering in the past year. A manager of appellant's store testified that the store has changed for the better and has implemented a number of changes designed to eliminate loitering and trash. He stated the store has posted "No Loitering" signs and has enacted a policy of suspending alcohol sales during the time each day's school session ends. He stated that the store has ceased selling items considered to be "drug paraphernalia."
 {¶ 17} Appellant argues that the testimony presented against renewal is unreliable because it came from people "crusading against alcohol" and "those who want Jacob's Market closed to further their own business interests." (Appellant's brief, at 14.) However, upon our own review of the entire record, we cannot say that the trial court abused its discretion in affirming the commission's appraisal of the testimonial evidence presented to it.
 {¶ 18} Appellant argues that the testimony presented by the division is not probative because it was speculative, it offered few details and some of it described situations occurring at least two years earlier. Appellant points out that the only witnesses who stated they shop at Jacob's Market on a regular basis testified to the improved conditions they have observed there recently, and that they have not seen loitering, drug activity and other illicit behavior at the store in the recent past. However, the applicable statutory and decisional law imposes no temporal requirements upon the commission in the taking of and reliance upon testimony or other evidence. So long as the evidence relied upon by the commission is relevant to the issues presented by the renewal application, it is probative.
 {¶ 19} In this case, the division presented the testimony of local residents who are familiar with Jacob's Market because they live nearby and have had occasion to observe it and its immediate environs on a regular basis. As such, their testimony was probative of the issue whether Jacob's Market has an adverse effect on the neighborhood and whether renewal of appellant's liquor permit would cause substantial interference with public decency, sobriety, peace or good order. This is true even with respect to testimony as to conditions at the store existing over the several months and years preceding the hearing.
 {¶ 20} Furthermore, we disagree with appellant's characterization of the division's witness testimony as general and lacking in detail. Hazetta Sargent testified that she has resided in the community for 33 years and passes by Jacob's Market at least three times per day. She stated she has observed individuals offering to sell drugs to motorists stopped at the traffic light in front of the store; she has observed intoxicated individuals in front of the store; she has seen cars parked on the sidewalk in front of the store; she has observed individuals whom she knows to be prostitutes standing in front of the store; in August of the year 2000 she witnessed an individual exit the store wielding a gun; and she has witnessed individuals urinating in public on the premises. Detective Moser testified that the Dayton Police Department responded to approximately 400 calls to 1600 West Riverview Avenue from January of the year 1999 through September of the year 2000, mostly arising out of conduct that originated in or in front of Jacob's Market.
 {¶ 21} Arvilee Bailey testified she can see Jacob's Market from her front porch and has resided in the neighborhood since 1998. She testified she has witnessed drug activity, loitering and fighting at the store, and she has heard gunshots coming from the vicinity of the store. She also testified to witnessing liquor sales at the store to minors. She stated that trash from the store is deposited on her property every day. She stated she witnesses drug activity at the store every day, beginning each day when Jacob's Market opens for business. She further stated that those engaged in drug transactions outside the store often retreat into the store once police are dispatched to the scene. She testified that she has seen individuals drinking alcohol outside the store and that she sees prostitutes walk up and down the sidewalk in front of the store several times each week from midday to evening. On the few occasions that Ms. Bailey has ventured into the store she saw for sale items used for "scrubbing" crack. She also stated that the store has stocked and sold out-of-date food products. On cross-examination, Ms. Bailey stated she has not noticed any recent improvement in conditions at and surrounding the store.
 {¶ 22} Monica Williamson lives eight blocks from Jacob's Market and drives by it several times per week. She has witnessed drug transactions and imbibing of alcohol in front of the store. She testified that she has seen a group of neighborhood men "hanging in and out of the store" on a regular basis. She further testified that she has seen drug paraphernalia for sale in the store. Ms. Williamson testified that the store stocks out-of-date food products and improperly stores frozen foods. Tom Tryba, an employee of a business whose property abuts that of Jacob's Market, testified in a fashion similar to Ms. Bailey and Ms. Williamson, and with a similar level of detail.
 {¶ 23} The foregoing testimony establishes good cause for the denial of appellant's liquor permit renewal application. The evidence plenteously supports the findings that (1) appellant operated the permit business in a manner that demonstrates disregard for the law pursuant to R.C. 4303.292(A)(1)(b), and (2) the location of the permit premises substantially interferes with public decency, sobriety, peace or good order pursuant to R.C. 4303.292(A)(2)(c). The adverse effects of the premises and its patrons on the surrounding area are sufficient alone for rejection of appellant's renewal applications, even if many of these "environmental factors" occur through no direct fault of the permit holder. See 3M, Inc. v. Liquor Control Comm. (Jan. 25, 2001), Franklin App. No. 00AP-529, and TBBTR, Inc. v. Liquor Control Comm. (Oct. 19, 1993), Franklin App. No. 93AP-158.
 {¶ 24} Based upon the foregoing, we find the trial court did not err in finding that the decision of the commission was supported by reliable, probative and substantial evidence, and appellant's single assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and WATSON, JJ., concur.