OPINION
{¶ 1} Appellant, Juva De, Inc. ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, which affirmed a decision by the Ohio State Liquor Control Commission ("commission") revoking appellant's liquor license.
 {¶ 2} For approximately 30 years, a liquor license has been held in appellant's name for permitted uses at a nightclub on Harvard Avenue in Cleveland, Ohio. Dale Carter is appellant's president and, according to Carter, its sole shareholder.
 {¶ 3} According to appellant, in February 2004, appellant entered into an agreement to sell the liquor license to Carolina's Enterprise Corp., whose sole shareholder is Kevin Tipper. Appellant filed with the Division of Liquor Control, Department of Commerce ("division"), an application to transfer ownership of the permit.
 {¶ 4} In March 2004, the division received a letter from an attorney representing Keith P. Johnson, who claimed to hold a 50 percent interest in appellant's liquor license. Enclosed with the letter was a copy of a July 29, 2002 notarized agreement between Carter and Johnson. The agreement stated:
In 2000, Keith Johnson loaned [appellant] $64, [illegible] * * *. Upon closing of loan from Akin Africa of $100,000, the loan will be converted into 50% stock interest in [appellant], which holds the Ohio liquor license and the restaurant business and equipment at 17322-24 Harvard Ave. At that point, application will be made to Ohio Dept. of Liquor Control for new 50% shareholder. Ratio is and will be: Dale J. Carter — [illegible] and Keith Johnson — 50%.
 {¶ 5} The letter alleged that Carter was attempting "a fraud" against Johnson by attempting to transfer appellant's liquor license to "a Mr. Akin Affrica, or an entity controlled by him." The letter also alleged that appellant's corporate charter had been revoked in 2000, and it made several allegations against Carter and associated individuals.
 {¶ 6} As a result of receiving the letter, the division conducted an investigation and determined that the Ohio Department of Taxation had cancelled appellant's corporate charter in 1990. Despite this cancellation, however, Carter had filed annual renewal applications with the division, and these applications never revealed a change in ownership or officers. Based on these findings, the division issued to appellant a notice of four violations: (1) false material statement in a permit application; (2) assignment, transfer or pledge of a permit without the division's consent; (3) operation of the business by someone other than the owner; and (4) non-disclosure of the true permit owner.
 {¶ 7} Following notice to appellant, the commission held a hearing on November 16, 2004. At the outset of the hearing, counsel for the division stated that two cases had been filed against appellant, but he requested dismissal of one case. The commission's chairman dismissed that case. Counsel for the division then stated:
And then we're proceeding on page 62's case, 1201-04. It's my understanding the permit holder will enter a denial stipulation to violations number 2 and 3, and we'll be proceeding on those. And we would move to dismiss violations number 1 and 4; is that correct?
[APPELLANT'S COUNSEL]: That's correct.
(Tr. at 4-5.)
 {¶ 8} Counsel for the division moved to admit the notice of hearing, proof of service, "and mutual Exhibit 1, the investigative report." (Tr. at 5.) The division then called Veronica Davenport, who confirmed that she had prepared the report regarding appellant.
 {¶ 9} Appellant's counsel presented argument to the commission. He confirmed that Carter had signed all applications and renewal requests for appellant. He stated, however, that:
* * * Carter did not know that [appellant] had been declared defunct in 1990 and he continued to operate it in the manner that the corporation was still a viable entity. * * *
* * *
All of these violations are of a technical nature. At all times Mr. Carter has operated [the] permit. He's done the renewals, and it was not his intent to commit a false and immaterial statement. And as I indicated, that statement was that rather the legal entity, that Dale Carter, the person, was the individual who had the legal and beneficial ownership of the permit.
(Tr. at 6-7.)
 {¶ 10} In response to questions, counsel for appellant stated that Carter had never received notice regarding the 1990 revocation and did not learn of it until he applied for transfer of the permit in 2004. As for Johnson's alleged ownership interest, Carter told the commission that Johnson "was just an investor" and that "no shares of stock were allocated for his investment." (Tr. at 10-11.) The discussion thereafter indicated that the question of Johnson's interest "is still pending in litigation in Cuyahoga County." (Tr. at 11.) When asked how the commission could approve a transfer without knowing who has authority to transfer the permit, appellant's counsel stated that appellant was not asking for approval of the transfer immediately, but understood that the transfer was being held up pending resolution of the violations against appellant. Through further questioning, appellant's counsel stated that Johnson had simply made a loan to appellant for remodeling costs and that appellant was only to repay the loan, with interest. He admitted, however, that appellant had not repaid the loan.
 {¶ 11} On November 29, 2004, the commission issued an order revoking appellant's permit, effective on December 20, 2004. The order states, in part:
2. The Permit Holder entered a plea of Denial W/Stipulation
as to violation(s) 2, 3. The Commission dismisses violation(s)1, 4 upon motion of the Attorney General.
3. The Commission finds Permit Holder in violation as to violation(s) 2, 3 and not in violation as to violations N/A.
(Emphasis sic.)
 {¶ 12} Appellant appealed the commission's order to the trial court. Before the trial court, appellant argued that the statements made in the application for transfer of the permit were not materially false and that estoppel should preclude the division's actions. On April 3, 2006, the court issued a judgment, which affirmed the commission's revocation order.
 {¶ 13} Appellant timely appealed and raises a single assignment of error:
THE COMMON PLEAS COURT ERRED AS A MATTER OF LAW IN SUSTAINING THE ORDER OF THE [COMMISSION] IN THAT MERE REVOCATION OF APPELLANT'S CORPORATE CHARTER DID NOT CONSTITUTE A TRANSFER OF ITS PERMIT.
 {¶ 14} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111.
 {¶ 15} The Ohio Supreme Court has defined reliable, probative, and substantial evidence as follows:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571 (footnotes omitted).
 {¶ 16} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. RossfordExempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.
(1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992), 80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, on a question of whether the commission's order was in accordance with the law, this court's review is plenary. Univ. Hosp., Univ.of Cincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 17} As an initial matter, we clarify that, before the commission, appellant entered into "denial stipulations" with respect to the alleged violations. While the commission's brief quotes the division's counsel as stating that "the permit holder will enter a * * * stipulation" to two violations, we note that the transcript reflects his statement that "the permit holder will enter a denial stipulation" to the two violations. Thus, appellant stipulated only to the facts underlying the charges; appellant did not stipulate to the violations themselves. SeeEasy Bros., Inc. v. Liquor Control Comm., Franklin App. No. 03AP-908, 2004-Ohio-3378, at ¶ 14 (the appellant "did not plead guilty to the charges lodged against him, but, rather, entered a `denial with stipulation,' by which he admitted the truth of the facts contained within the charges but denied that those facts constituted a violation of the law").
 {¶ 18} We also clarify that the commission found, and the trial court affirmed the commission's finding, that appellant had committed two violations, which the notice of violation identifies as violations 2 and 3. Violation 2 alleged that, on or about June 19, 2004, appellant, its agents, employers, Carter, and/or Tipper made a false material statement in an application, "in violation of Section 4301.25(B), of the Ohio Revised Code." We note, however, that R.C. 4301.25(B) authorizes the commission to revoke a permit upon conviction of the permit holder for violation of R.C. 2913.46, trafficking in or illegal use of food stamps, a conviction apparently not relevant here. We assume that the intended allegation was a violation of R.C. 4301.25(A)(3), "[m]aking any false material statement in an application for a permit[.]" While appellant argued below that the notice was insufficient, appellant does not raise the issue here. Therefore, we do consider whether the notice issued to appellant was sufficient.
 {¶ 19} Appellant's arguments before this court focus on violation 3, which alleged that, on or about June 19, 2004, appellant, its agents, employees, Carter, and/or Tipper sold, assigned, transferred or pledged appellant's D-5, D-6 liquor permit without the written consent of the division, in violation of R.C. 4303.29 and/or 4301.25. As to this violation, appellant makes two primary arguments: first, that the commission erroneously found that the 1990 revocation of the corporate charter constituted a "transfer" of the permit; and second, that there was no false material statement because the corporation continued to exist even after the 1990 revocation.
 {¶ 20} R.C. 4303.29(A) provides, in pertinent part: "No holder of a permit shall sell, assign, transfer, or pledge the permit without the written consent of the division." R.C.4301.25(A) further provides, in pertinent part:
The [commission] may suspend or revoke any permit issued under [R.C. chapters 4301 or 4303] for the violation of any of the applicable restrictions of either chapter or of any lawful rule of the commission, for other sufficient cause, and for the following causes:
* * *
(3) Making any false material statement in an application for a permit;
(4) Assigning, transferring, or pledging a permit contrary to the rules of the commission[.]
 {¶ 21} On the question of whether the commission erroneously found that the 1990 revocation constituted an unlawful transfer of the permit, we find no indication in the record that the commission based its finding of an unlawful transfer on the 1990 revocation. Rather, the unlawful transfer at issue arose from evidence, including the investigator's report and Carter's own testimony, indicating that Carter assigned an interest in the business and/or appellant's liquor license to Johnson. With evidence of that assignment before it, and without evidence that appellant sought or received prior approval from the division or that appellant disclosed Johnson's ownership interest on its renewal applications, the commission could properly find, and the trial court did not abuse its discretion in affirming the commission's finding, that appellant violated R.C. 4303.29 and4301.25. See, also, R.C. 4303.293(A) (requiring an applicant to list the name of "each person having a legal or beneficial interest in the ownership of the business").
 {¶ 22} On the question of whether appellant existed as a business even after the 1990 revocation, appellant cites precedent indicating that a corporation continues to exist for certain purposes even after its corporate charter has been cancelled. However, appellant cites to no precedent, nor have we found any, indicating that a corporation continues to exist for purposes of holding, renewing or transferring a liquor license 14 years after revocation of its corporate charter. Appellant presented no evidence of its corporate existence for any other purpose after 1990 and no evidence that appellant corrected its status with the Department of Taxation after the revocation.
 {¶ 23} As the trial court found, the liquor industry is highly regulated and subject to strict enforcement. CaponesTavern, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 02AP-53, 2002-Ohio-4322, at ¶ 11. Ohio law contains numerous provisions for the disclosure of owners of, and ownership interests in, businesses holding liquor licenses. These provisions serve the state's obvious interest in knowing who owns and/or controls the permit holder. Here, the commission had before it stipulated evidence that appellant, the permit holder, did not exist, and had not existed for 14 years, as a corporate entity. A violation of the commission's rule against making a false statement need not be intentional. Ronic, Inc. v. OhioLiquor Control Comm., Franklin App. No. 02AP-1244, 2003-Ohio-3188, fn. 4. Therefore, regardless of whether Carter intended to misrepresent appellant's corporate status, the evidence supports the commission's finding that appellant and/or Carter made a false statement concerning ownership of the business, violation 2.
 {¶ 24} In addition, the commission also had before it stipulated evidence that Carter had assigned an interest in the business to Johnson. That evidence supports the commission's finding that appellant and/or Carter violated R.C. 4301.25 by failing to disclose Johnson's interest, violation 2, and violated R.C. 4303.29 and 4301.25 by assigning an interest in the permit without the division's approval, violation 3.
 {¶ 25} Finally, we decline appellant's invitation to exercise any equitable powers we may have to disregard the 1990 revocation and consider Carter as the permit holder. Even if we were to disregard the revocation, evidence of Carter's assignment to Johnson would still support the commission's finding that appellant and/or Carter violated the law by failing to disclose Johnson's interest and by assigning an interest in the license without the division's approval. And, having concluded that the commission properly determined that a violation occurred, this court has no power to modify the commission's sanction. Ronic
at ¶ 25, citing Henry's Café, Inc. v. Bd. of Liquor Control
(1959), 170 Ohio St. 233, and McCartney Food Market, Inc. v.Liquor Control Comm. (June 22, 1995), Franklin App. No. 94APE10-1576.
 {¶ 26} For all of these reasons, we overrule appellant's single assignment of error. Accordingly, we affirm the decision of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and McGrath, JJ., concur.