CASTRO, Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellees.

2010-Ohio-3174.]

Court of Common Pleas,
Wood County.

No. 09 CV 318.

Decided March 16, 2010.

34

---

Robert Woodley, for appellant.

Richard Cordray, Attorney General, and Denise Pleska, Assistant Attorney General, for appellee Ohio Department of Job and Family Services.

Reeve Kelsey, Judge.

{¶ 1} This case is before the court on the appeal of appellee Ohio Department of Job and Family Services' ("ODJFS") determination in the case of appellant, Guadalupe Castro. Castro filed her appellate brief on October 14, 2009. ODJFS filed its brief on November 5, 2009. Castro filed a response on November 23, 2009. The court will now decide this matter.

## Facts

{¶ 2} Castro is the mother of children from two different fathers – three from Antonio Lopez Sr. and at least one from Edward Silva.[1] From April 1993 to July 2002, she sporadically received benefits under the Ohio Works First ("OWF") program.[2] The hearing officer stated that the total amount of OWF assistance owed to the state was $15,322.[3] During this nine-year period, child-support orders with Lopez as the obligor were established, first in Lucas County and then in Ottawa County.[4] Lopez failed to pay his child support as ordered. Substantial child-support arrearages accrued during the same time Castro was receiving OWF benefits.[5] Sometime after Castro moved to Wood County, the Wood County Court of Common Pleas, Juvenile Division, ordered the Wood County Child Support Enforcement Agency ("CSEA") to complete an audit of Lopez's file and report his total arrearage as of June 2, 2006, including any arrears from Lucas and Ottawa Counties.[6] The audit revealed that Lopez was $14,895.99 in arrears on his support obligation. The Juvenile Court ordered a judgment of that amount in Castro's favor.[7]

{¶ 3} From 2005 to 2008, the CSEA intercepted several tax refunds owed to Lopez by the Internal Revenue Service ("IRS") and paid them to ODJFS to reimburse it for OWF funds paid to Castro.[8] Castro objected to the interception of a part of these refunds because all OWF funds Castro received since the

---

1. The record does not indicate the number of children Castro has with Silva.

2. R.C. Chapter 5107.

3. February 9, 2009 state hearing decision, p. 2, certified record, p. 1–7.

4. Although Castro also has child-support orders against Silva, his child-support case and tax refunds are not at issue here.

5. February 9, 2009 state hearing decision, p. 2, certified record, p. 1–7.

6. September 8, 2006 Juvenile Court judgment entry, certified record, p. 45–46.

7. October 2, 2006 Juvenile Court judgment entry, certified record, p. 48–49.

8. February 9, 2009 state hearing decision, p. 3, certified record, p. 1–7.

inception of Lopez's child-support orders were repaid after using only a portion of the June 2008 refunds.[9] At the time of the June 2008 interception, ODJFS was still owed money for OWF funds Castro received prior to the effective date of Lopez's child-support orders.[10]

{¶ 4} After the CSEA paid the income tax refund to ODJFS, Castro appealed the decision. The hearing officer overruled her appeal on February 9, 2009.[11] She filed an administrative appeal. The administrative-appeal officers affirmed the state hearing officer's decision.[12] On April 1, 2009, Castro filed her notice of appeal in this court.

## Law

{¶ 5} The role of the court in an appeal from an ODJFS decision is limited to determining whether the agency's decision is supported by reliable, probative, and substantial evidence and is in accordance with the law.[13] To be "reliable," evidence must be dependable and confidently trusted. There must also be a reasonable probability that it is true.[14] "Probative" evidence must be relevant to and tend to prove the disputed issue.[15] "Substantial" evidence must have some weight, importance, and value.[16] If the court cannot make such a finding, it may reverse, vacate, or modify the agency's decision in any way that is supported by reliable, probative, and substantial evidence and is in accordance with the law.[17] In undertaking its review, the court must consider the entire record to see whether the evidence is of the requisite quality, while still affording deference to the hearing officer's factual determinations and resolution of evidentiary conflicts.[18]

---

9. Id.

10. Id.

11. Id. at p. 5.

12. March 3, 2009 administrative appeal decision.

13. R.C. 119.12; and R.C. 5101.35(E).

14. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

15. Id.

16. Id.

17. R.C. 119.12.

18. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 6} Federal law requires that participation in OWF constitutes an automatic assignment to ODJFS of an obligee's rights to child support.[19] Such an assignment creates an obligation on behalf of the child-support obligor to the state for the amount of OWF assistance paid to the assistance group.[20] An assistance group is defined as "a group of individuals treated as a unit for purposes of determining eligibility for and the amount of assistance provided under Ohio works first."[21] The support that is assigned to ODJFS specifically includes child support owed to the person receiving OWF assistance without regard to the obligor.[22]

{¶ 7} When a child-support obligee who is entitled to arrears from a child-support obligor begins receiving OWF assistance, all current child support and any child-support arrears owed to that obligee are assigned to ODJFS.[23] On the date the assignment becomes effective, arrears that accrued before the obligee began receiving OWF transfer from being unassigned arrears to conditionally assigned arrears.[24] "Unassigned arrears" are those that have never been assigned to ODJFS.[25] "Conditionally assigned arrears" are those that accrued before the obligee began receiving OWF assistance.[26] Child-support arrears that accrue while the obligee is receiving OWF assistance are considered "permanently assigned arrears."[27]

{¶ 8} When a child-support obligee is no longer receiving OWF assistance, any permanently assigned arrears (up to the amount of assistance paid to the obligee by OWF) remain permanently assigned, and any conditionally assigned arrears (up to the amount of assistance paid to the obligee by OWF) remain conditionally assigned.[28]

---

19. R.C. 5107.20; Ohio Adm.Code 5101:1–3–10(A); and Section 608(a)(3), Title 42, U.S.Code.

20. Id.

21. R.C. 5107.02(B).

22. Ohio Adm.Code 5101:1–3–10(A)(1)(b).

23. Ohio Adm.Code 5101:12–80–14(B)(1).

24. Ohio Adm.Code 5101:12–80–14(B)(1)(b)(i).

25. Ohio Adm.Code 5101:12–80–10(A)(11).

26. Ohio Adm.Code 5101:12–80–10(A)(4).

27. Ohio Adm.Code 5101:12–80–10(A)(8).

28. Ohio Adm.Code 5101:12–80–14(B)(2)(b)(i), (ii).

{¶ 9} One way for ODJFS to recoup amounts it paid an OWF recipient is by intercepting IRS tax refunds owed to a child-support obligor who is in arrears.[29] When ODJFS does so, the refund is distributed in the following order: permanently assigned arrears, conditionally assigned arrears, other categories of arrears, and finally to the obligor.[30]

### Issue and Analysis

{¶ 10} The issue before the court is whether ODJFS can properly intercept tax refunds from a child-support obligor to repay arrearages owed to OWF due to assistance received by the obligee for children who are not the children of the obligor to whom the tax refund is owed.

{¶ 11} Castro's main argument in support of her appeal is that the hearing officer's decision is not in accordance with the law because ODJFS erred in applying tax-refund money owed to Lopez to recoup money owed the state for OWF assistance paid to Castro for Silva's children, and before Lopez's child-support order existed. A close examination of the statutes and rules applicable to OWF recoupment demonstrates that her argument lacks merit.

{¶ 12} The laws and rules regarding recoupment of funds paid by OWF are written in terms of funds paid to the "assistance unit," which consists of the child-support obligee and her children. The rules also require that *all* child-support arrearages – without regard to the obligor – that exist at the time an obligee begins receiving OWF assistance, and that accrue during the course of the obligee receiving OWF assistance, be assigned to ODJFS. The court found no rules, statutes, or case law that restrict the obligor from whom ODJFS may intercept tax refunds in a factual situation such as the one presented in this case. Even though Castro attempts to divide the arrearages owed to ODJFS into two categories based on the obligor whose children received OWF assistance, her arguments are unpersuasive because the law governing OWF recoupment provides that all arrearages, regardless of their source, be used to repay the state for welfare assistance it provides.

{¶ 13} Castro further argues that the hearing officer's decision is not in accordance with the law because Ohio Adm.Code 5101:1–29–31 prohibits the commingling of cases. This section of the Ohio Administrative Code was rescinded effective June 15, 2006, however, so it is inapplicable to this case. Even though one of the tax-refund intercepts at issue in this case occurred prior to the date that Ohio Adm.Code 5101:1–29–31 was rescinded, the record indicates

---

29. Section 664, Title 42, U.S.Code; and R.C. 3123.81.

30. Ohio Adm.Code 5101:12–80–10.1.

that the commingling of which Castro complains did not occur until after June 15, 2006. Based on the foregoing, the court finds that the hearing officer's decision is in accordance with the law.

█ {¶ 14} Before the court can uphold the hearing officer's decision, it must also find that the decision is supported by reliable, probative, and substantial evidence. Castro attacks the evidence the hearing officer used to arrive at her decision as outside the scope of the Ohio Rules of Evidence, and therefore, inherently unreliable and not probative. She is particularly critical of the CSEA audit of October 5, 2005.[31] She claims that the Wood County Common Pleas Court, Juvenile Division, specifically found this document to be insufficient evidence.[32] Castro is correct that the juvenile court found the document to be insufficient to properly calculate the *child-support* arrearage Lopez owed. This case does not involve the amount of Lopez's child-support arrearage, however. Rather, it concerns how much, if any, of Lopez's tax refunds may be intercepted by the state to recoup amounts paid to Castro by OWF. If the court were attempting to calculate Lopez's child-support arrearage, it would be inclined to agree with Castro's assessment, but, as that is not the case, the court finds no merit in her attack on this particular CSEA audit.

{¶ 15} The court further finds that the other evidence in the certified record that the hearing officer relied on meets the criteria for being reliable, probative, and substantial. Although not all of the documents in the certified record strictly comply with the Ohio Rules of Evidence, as Castro alleges they should, evidence submitted at an ODJFS state hearing is not required to comply with formal rules of evidence.[33] Further, the transcript of the state hearing shows that many, if not all, of the documents included in the certified record as exhibits were testified to in some way at the hearing. The court finds that the record before it demonstrates that the state hearing officer based her decision on reliable, probative, and substantial evidence.

{¶ 16} The final issue Castro raises in her appeal is that she is entitled to the entire amount of arrearages owed in Lopez's case. On October 2, 2006, the juvenile court awarded Castro a lump-sum judgment against Lopez in the amount of $14,895.99. Castro's arguments fail to consider that her rights to any child-support arrearages were assigned to ODJFS when she accepted OWF assistance. The assignment in OWF cases is automatic and statutory; it cannot be waived

---

31.  Certified record, p. 58–59.

32.  See September 8, 2006 juvenile court judgment entry, p. 4, attached to Castro's October 14, 2009 brief.

33.  Ohio Adm.Code 5101:6–6–02(B)(1).

without the consent of ODJFS, the assignee. There is no evidence in the record that ODJFS consented to waiving its assignment rights or that it was a party to the case in which the juvenile court issued its decision. Therefore, ODJFS still has a right to collect an amount equal to that which it paid Castro in OWF assistance, despite the fact that the court awarded the judgment in her favor. Castro's rights in the arrearages are subordinate to ODJFS's rights to the amounts assigned it by operation of law.

{¶ 17} The court finds, therefore, that Castro's appeal is not well taken.

{¶ 18} Although the court has found that the hearing officer's decision was properly supported and in accordance with the law, a review of some of the calculations in the decision reveals that they are incorrect. The cash-issuance history included in the certified record is a record of all amounts paid to Castro. It also notes whether Castro cashed each check or returned it to the agency.[34] Some of the entries on the cash-issuance history do not indicate what action, if any, was taken with a particular check.[35] Without some indication that Castro both received and retained those funds, the court cannot find that Castro owes those amounts to the state. When the amounts of the checks issued to and cashed by Castro are added together, the resulting amount is $14,775, not the $15,332 figure in the hearing officer's decision.[36] The hearing officer's decision also clearly states that the figure in her decision is for the amount of assistance "actually authorized, not paid" for the period in question.[37] Based on the facts in the record, the court will modify the hearing officer's decision to reflect the correct amount of OWF assistance paid to Castro as $14,775.

{¶ 19} Modifying the total owed for repayment of OWF assistance also modifies the remaining balance of Castro's account. The hearing officer found the remaining balance to be $6,770.11. As the initial figure used by the hearing officer was $557 too much, the court will reduce the account balance by $557, resulting in a balance of $6,213.11.

{¶ 20} It is ordered that with the exception of the modifications noted, the decision of appellee Ohio Department of Job and Family Services issued on February 9, 2009, is affirmed.

---

34. January 15, 2009 state hearing transcript, p. 37.

35. Cash Issuance History, Agency's Exhibit F, January 15, 2009 state hearing, certified record, p. 77, 78.

36. Id. at p. 71–78; and January 15, 2009 state hearing transcript, p. 37.

37. February 9, 2009 state hearing decision, p. 2, certified record, p. 1–7.

{¶ 21} It is ordered that the total amount of Ohio Works First assistance paid to Castro is modified to $14,775.

{¶ 22} It is ordered that the unreimbursed amount of Ohio Works First assistance paid to Castro is modified to $6,213.11.

{¶ 23} It is ordered that Castro is not entitled to receive the tax refunds previously intercepted by appellee Ohio Department of Job and Family Services, and those refunds were properly used to recoup assistance paid to Castro through the Ohio Works First program.

Judgment accordingly.