OPINION
{¶ 1} Appellant, Linda Luscre-Miles, appeals the decision of the Portage County Court of Common Pleas, denying her appeal from a Resolution adopted by appellee, Ohio State Board of Education, suspending her permanent elementary and eight-year education of the handicapped teaching certificates for a period of one year. For the reasons that follow, we affirm the decision of the court below. *Page 2 
 {¶ 2} Luscre-Miles is employed as a teacher by the Kent City School District with over twenty-five years of teaching experience. During the 2005-2006 school year, Luscre-Miles was employed as a sixth grade teacher at Stanton Middle School.
 {¶ 3} In March 2006, Luscre-Miles served as a proctor for the Ohio Achievement Test. On Monday, March 6, Luscre-Miles and team teacher, Margaret Mackanos, administered the reading portion of the test to their sixth grade classes. Luscre-Miles was given a test booklet, containing the reading and mathematics tests, to be administered later in the week. While the reading test was being administered, Luscre-Miles was working on a practice worksheet for the mathematics test.
 {¶ 4} According to Luscre-Miles' testimony, a student asked her a question about one of the problems on the test. Luscre-Miles flipped through her copy of the test to find the problem in question. In doing so, she noticed an instruction in the mathematics portion of the test, "solve for X." After addressing the student's question, Luscre-Miles changed the directions for questions 9 and 13 of her practice worksheet from "solve for the value of X" to "solve for X." Luscre-Miles testified that she thought the instruction in the test booklet was "much more clear" than the instruction in her worksheet.
 {¶ 5} After completing the practice worksheet, Luscre-Miles distributed it to her fellow sixth-grade teachers. When handing the worksheet to the other teachers, Luscre-Miles told them words to the effect of "don't let the students take this home" and "destroy this when you are done." Luscre-Miles claimed these comments were meant sarcastically, as a way to break the "tension" created by the administration of the Achievement Tests. The other teachers, however, did not understand Luscre-Miles to *Page 3 
be joking and her comments made them feel uncomfortable. Only Luscre-Miles and Mackanos actually distributed the worksheet to their students.
 {¶ 6} On Friday, March 10, 2006, the mathematics portion of the test was administered. Joshua Thomas, one of the teachers to whom Luscre-Miles had given the worksheet, noticed similarities between some of the problems on the test and the ones on the worksheet. Thomas brought this to the attention of Julie Foley, the Dean of Sixth Grade Students at Stanton Middle School.
 {¶ 7} On Monday, March 13, 2006, Luscre-Miles was questioned about the worksheet by school officials, including Principal Tim Dortch.
 {¶ 8} On June 21, 2006, the State Board of Education sent notice to Luscre-Miles that it intended to determine whether to suspend her teaching certificates for the following reason: "On or about Monday, March 6, 2006, you violated achievement test security by creating test reviews using the operational test during the administration of the Ohio Sixth-Grade Achievement Test in Mathematics. Your acts, conduct, and/or omissions as alleged in paragraph one above violate Section 3319.151 of the Ohio Revised Code and paragraphs (D) and (G) of Sections 3301-13-05
of the Ohio Administrative Code."
 {¶ 9} Pursuant to Chapter 119 of the Revised Code, Luscre-Miles requested a hearing on this matter. Hearings were held on October 16, 2006, and December 1, 2006.
 {¶ 10} On May 3, 2007, the Hearing Officer issued his Report and Recommendation. The Officer determined that Luscre-Miles "violated Ohio Revised Code section 3319.151(A) on March 8, 2006 by revealing to students a specific *Page 4 
question known by Ms. Miles to be part of an Ohio Achievement Test to be administered on March 10, 2006." Pursuant to R.C. 3319.151(B), the Officer recommended that her teaching certificates be suspended for one year. R.C. 3319.151(B) ("[o]n a finding by the state board of education, after investigation, that a school employee who holds a license * * * has violated division (A) of this section, the license of such teacher shall be suspended for one year").
 {¶ 11} Specifically, the Hearing Officer found: "Three of the ten mathematics problems presented in * * * the March 6, 2006 [practice] worksheet completed and distributed by Ms. Miles on March 6, 2006, contain questions that are significantly more similar, and in some cases almost identical, to mathematics questions appearing within the mathematics Achievement Test given at Stanton Middle School on March 10, 2006, than to source documents purportedly used."
 {¶ 12} On July 10, 2007, the State Board of Education adopted a Resolution accepting the Report and Recommendation and suspended Luscre-Miles' teaching certificates.
 {¶ 13} On July 26, 2007, Luscre-Miles filed her Notice of Appeal of an Order of the State Board of Education in the Portage County Court of Common Pleas.
 {¶ 14} On May 12, 2008, the trial court issued its Order and Journal Entry, concluding "that the Ohio State Board of Education did not err in enacting their Resolution of July 10, 2007, and affirming the Report and Recommendation of the hearing officer and suspending [Luscre-Mile's] teaching licenses for one year."
 {¶ 15} This appeal timely follows.
 {¶ 16} On appeal, Luscre-Miles raises the following assignments of error: *Page 5 
 {¶ 17} "[1.] The Court of Common Pleas erred in finding that appellant violated § 3319.151 when she used similar questions on a student practice worksheet."
 {¶ 18} "[2.] The Court of Common Pleas erred in upholding the Hearing Officer's factual findings."
 {¶ 19} Pursuant to R.C. 3319.151(A), "No person shall reveal to any student any specific question that the person knows is part of a test [mandated by statute to test student achievement] or in any other way assist a pupil to cheat on such a test." "On a finding by the state board of education, after investigation, that a school employee who holds a license issued [by the state board of education] has violated division (A) of this section, the license of such teacher shall be suspended for one year. Prior to commencing an investigation, the board shall give the teacher notice of the allegation and an opportunity to respond and present a defense." R.C. 3319.151(B).
 {¶ 20} The State Board of Education's decision to suspend a school employee's teaching license or licenses is reviewable by the court of common pleas. R.C. 119.12 ("[a]ny person adversely affected by any order of an agency issued pursuant to an adjudication * * * revoking or suspending a license * * * may appeal from the order of the agency to the court of common pleas of * * * the county in which the licensee is a resident").
 {¶ 21} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, *Page 6 
probative, and substantial evidence and is in accordance with law." R.C. 119.12. "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, Inc. v. Ohio Liquor ControlComm. (1992), 63 Ohio St.3d 570, 571 (footnotes omitted).
 {¶ 22} The trial court's ruling may be appealed by either party "as in the case of appeals in civil actions." R.C. 119.12. "While the determination to be made by the court of common pleas is based on whether there is reliable, probative and substantial evidence to support the board's finding, the standard of review to be applied by this court is whether the court of common pleas abused its discretion in making that determination." Kennedy v. Marion Correctional Institution,69 Ohio St.3d 20, 21-22, 1994-Ohio-83 (citations omitted). The role of the appellate court is "to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 23} In the first assignment of error, Luscre-Miles maintains the trial court erred in upholding the finding that she had violated R.C. 3319.151(A) by creating a practice worksheet. Luscre-Miles interprets the statute's prohibition against revealing "any specific question" that is part of an achievement test to mean revealing specific questions verbatim. Since none of the questions on the practice worksheet were taken *Page 7 
"verbatim from the Ohio Achievement Test," Luscre-Miles "did not reveal specific questions to her students."
 {¶ 24} As an initial matter, Luscre-Miles urges that the proper standard of review for this issue is de novo, the usual standard of review for purely legal issues such as statutory interpretation. E.g.Webb v. State Med. Bd. of Ohio, 146 Ohio App.3d 621, 627, 2001-Ohio-3991
("[o]n questions of law * * * the common pleas court does not exercise discretion and our review is plenary"). We disagree. In the administrative law context, an agency's interpretation of statutes is reviewed under a deferential standard. "When interpreting statutes, courts must give due deference to those interpretations by `an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility.'" Shell v. OhioVeterinary Med. Licensing Bd., 105 Ohio St.3d 420, 2005-Ohio-2423, at ¶ 34 (citations omitted); Northwestern Ohio Bldg. Constr. TradesCouncil v. Conrad, 92 Ohio St.3d 282, 287, 2001-Ohio-190 ("if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme");Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc. (1984),467 U.S. 837, 843 ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").
 {¶ 25} As did the trial court and Hearing Officer, we reject Luscre-Miles' position that R.C. 3319.151(A) only prohibits the verbatim revealing of specific questions. Such a narrow interpretation would defeat the statute's purpose, which is to broadly prevent *Page 8 
anyone from "assist[ing] a pupil to cheat on such a test." The statute expressly identifies the revealing of specific questions as one way of assisting pupils to cheat, but then condemns such assistance from being given "in any other way."
 {¶ 26} Consistent with the Hearing Officer's decision, the statute should be read to prohibit revealing the specific types of questions found on the Achievement Tests, rather than or in addition to specific questions verbatim.
 {¶ 27} Luscre-Miles counters that a "good" practice worksheet will resemble the test for which it is preparing students. She cites to testimony in the record that there are only a limited number of ways to draft questions to test math concepts at the sixth grade level and that the content of the proficiency exams is standardized. "As a result, the materials created by teachers, to teach these standardized concepts, will be substantially similar to the Achievement Test. Because of the information available to teachers and the fact that content based standards test only a limited set of material, it is likely that a teacher's work will be similar to the Ohio Achievement Test."
 {¶ 28} Luscre-Miles misconstrues the statute, which does not simply prohibit a teacher from revealing specific and/or similar types of questions, but prohibits the revelation of questions "that the person knows is part of a test." In other words, Luscre-Miles was not found to have violated R.C. 3319.151(A) by merely creating a practice worksheet with questions similar to those found on the Achievement Test. Rather, she violated the statute for revealing specific questions that she knew would be a part of the mathematics portion of the Ohio Achievement Test administered on March 10, 2006.
 {¶ 29} Thus, we find no error in the Board of Education's construal of R.C. 3319.151(A) or its application to Luscre-Miles' conduct. *Page 9 
 {¶ 30} Luscre-Miles further argues that, if the Board of Education's construal of R.C. 3319.151(A) was proper, the Hearing Officer's methodology for determining if she used her knowledge of the Ohio Achievement Test to modify her practice worksheet was flawed and unreliable. According to Luscre-Miles, the Hearing Officer based his conclusions solely on a comparison of the questions on the test with the questions on the worksheet. She objects to this methodology on the grounds that "the questions were inevitably similar, due to the limited content based standards and the fact that the goal of every teacher is to make a similar worksheet for practice."
 {¶ 31} We disagree that the Hearing Officer based his conclusions solely on a comparison of the questions. Such a comparison was a necessary element of the analysis, for it was essential to establish that "specific questions" were revealed. As noted above, it was also necessary to demonstrate that Luscre-Miles knew these particular questions would be part of the test. The Hearing Officer's decision also depends on evidence that Luscre-Mile possessed such knowledge.
 {¶ 32} Within the Hearing Officer's Report and Recommendation, it was found that, while proctoring the reading test on March 6, 2006, Luscre-Miles looked at a portion of the mathematics test to be administered on March 10. It was further found that Luscre-Miles made changes to a practice mathematic worksheet based on her observations of the content of the mathematics test. This finding is supported by Luscre-Miles' own admission that, based on her observation of the mathematics portion of the test, she changed the instructions for two problems in the practice worksheet from "solve to find the value of X" to "solve for X." *Page 10 
 {¶ 33} The Hearing Officer also based his conclusion on the comments made by Luscre-Miles when she distributed her worksheet to other teachers, that the worksheet should not be sent home with the students and/or should be destroyed when the students were finished. Although Luscre-Miles claims these comments were made in jest, to break the tension created by the testing, the Hearing Officer found otherwise. "The referee finds it difficult to locate the tension Ms. Miles has ascribed to her fellow teachers, and finds more plausible a tension felt by Ms. Miles about the appropriateness of some of the math problems on the March 6, 2006 worksheet." The Hearing Officer noted that five of the teachers to whom the worksheet was distributed were sufficiently disturbed by Luscre-Miles' comments that they chose not to use the worksheet with their students.
 {¶ 34} Luscre-Miles also takes exception with the Hearing Officer's finding that three of the ten questions on the practice worksheet were "significantly more similar, and in some cases almost identical, to mathematics questions appearing within the mathematics Achievement Test." We will presently consider one of the three questions identified by the Hearing Officer as revealing a specific question, since the revealing of a single question would be sufficient to uphold the decision that Luscre-Miles violated R.C. 3319.151(A). The remaining questions so identified by the Hearing Officer, the corresponding Achievement Test questions, and the sources purportedly used by Luscre-Miles to create practice questions are contained in an appendix at the end of this opinion.
 {¶ 35} The Hearing Officer found question 10 of the practice worksheet to be "practically identical" to question 27 of the Achievement Test: *Page 11 
 {¶ 36} Question 10 of the practice worksheet: "Which figure represents a perpendicular intersection of 2 lines?" The possible answers include the perpendicular intersection of two lines; an angle formed by two lines; and parallel lines.
 {¶ 37} Question 27 of the Achievement Test: "Which figure represents a perpendicular intersection of two planes?" The possible answers include the perpendicular intersection of two planes; an angle formed by two planes; parallel planes; and another angle formed by two planes.
 {¶ 38} Purported source for question 10: "Which of the following correctly identifies the relationship of Planes B and C?" An accompanying illustration depicts a vertical plane (C) intersected perpendicularly by two parallel planes (A and B). The possible answers are that they are parallel; they are perpendicular; they are intersecting; and they are parallel and intersecting.
 {¶ 39} The Hearing Officer concluded these problems were identical except that the practice problem used lines (one dimensional figures) while the test problem used planes (two dimensional figures) and that the test problem contained an additional possible answer. Otherwise, the question and possible answers were the same.
 {¶ 40} Given the evidence before it, the trial court did not abuse its discretion by upholding the Hearing Officer's finding. As Luscre-Miles acknowledges, there are similarities and differences between the three questions. Thus, the finding that the questions are similar is supported by some reliable, probative, and substantial evidence. As noted above, similarity between a practice question and a test question, without more, would be insufficient to find a violation of the statute. In the present case, there was additional evidence that the similarity in the questions was due to more than just coincidence. Accordingly, the finding that the similarity is due to Luscre-Miles' foreknowledge of a specific question on the Achievement Test is also supported by reliable, probative, and substantial evidence.
 {¶ 41} The first assignment of error is without merit. *Page 12 
 {¶ 42} In the second assignment of error, Luscre-Miles contends that the Hearing Officer's findings are "wholly incredible" given the circumstances of the case. "It is hard to fathom that a twenty-five-year teaching veteran would risk her teaching licenses and career by violating the rules set forth by the Ohio Department of Education." She further points out she and her team teacher both allowed their students to take the worksheet home. Therefore, it does not make sense that she would advise other teachers not to allow the worksheets to go home unless she were joking.
 {¶ 43} Both these arguments pertain to the weight of the evidence, which this court may not consider in the context of an administrative appeal. It has been often remarked that, "[i]n reviewing an order of an administrative agency, * * * [i]t is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court."Bartchy v. State Bd. of Edn.,___ Ohio St.3d ___, 2008-Ohio-4826, at ¶ 41 (citations omitted). "The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. ofEdn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 261.
 {¶ 44} The arguments raised by Luscre-Miles regarding the probability of the Hearing Officer's conclusions being correct does render the trial court's decision to affirm an abuse of discretion. Those conclusions were not wholly unsupported by the evidence.
 {¶ 45} The second assignment of error is without merit. *Page 13 
 {¶ 46} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas affirming the Ohio State Board of Education's decision to suspend Luscre-Miles' teaching licenses for one year is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.