[Cite as *Gyugo v. Franklin Cty. Bd. of Dev. Disabilities*, 2016-Ohio-823.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Gyugo, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-150 |
| v. | : | (C.P.C. No. 14CVF-10833) |
| Franklin County Board of Developmental Disabilities, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

---

D E C I S I O N

Rendered on March 3, 2016

---

**On brief:** *McFadden & Winner*, and *Mary Jane McFadden*, for appellant. **Argued:** *Mary Jane McFadden*.

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Denise L. DePalma*, for appellee. **Argued:** *Denise L. DePalma*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Michael Gyugo, appeals from a final judgment of the Franklin County Court of Common Pleas that affirmed a decision of the State Personnel Board of Review holding that appellant was properly terminated from his job at the Franklin County Board of Developmental Disabilities ("FCBDD"). For the reasons that follow, we affirm the judgment of the trial court.

## I. BACKGROUND

{¶ 2} The facts in this case are undisputed. Appellant was, on a date not reflected in the record, convicted of a violation of one of the statutes listed in R.C. 109.572(A)(3)(a).

Such a conviction is listed as a "tier two" offense in Ohio Adm.Code 5123:2-2-02(E)(1)(b), and, as such, precludes employment as a certified provider with FCBDD for a period of ten years.[1] In 1992, an Ohio Court of Common Pleas ordered records relating to that conviction sealed pursuant to R.C. 2953.31 and 2953.32. According to the text of the court's order sealing the records, the proceedings in the underlying criminal case were deemed "not to have been [sic] occurred," the conviction was "expunged," and "all records pertaining to the conviction would thereafter be confined to the specific uses and by the officials set forth in R.C. 2953.32 and R.C. 2953.35." (Stipulations, 2.)

{¶ 3} Approximately three years later, in April 1995, appellant applied for a job as a training specialist with FCBDD. The application for the training specialist position informed appellant that he would be subjected to a criminal background check if he were "under final consideration for employment with the Board" and posed the following multi-part question:

1. Have you ever been convicted of or pleaded guilty to any of the following?

   a. A felony contained in the Ohio Revised Code:

      Yes ☐          No ☐

   b. A crime contained in the Ohio Revised Code constituting a misdemeanor of the first degree on the first offense and a felony on subsequent offenses:

      Yes ☐          No ☐

   c. A violation of an existing or former law of Ohio, any other state, or the United States, which offense is substantially equivalent to any of the offenses described in (a) or (b) above:

      Yes ☐          No ☐

---

[1] At the time of the termination of his employment, appellant's prior conviction was listed as a tier-two offense under the regulation, and appellant does not argue that his conviction does not otherwise qualify for this designation.

Appellant checked the box next to "No" in every instance.  FCBDD obtained a criminal background check of appellant as the application promised, but the background report, for reasons unknown, did not disclose appellant's sealed conviction.

{¶ 4}   Shortly after applying, appellant was hired. In 1996, 2000, 2004, and 2008, appellant was required to renew his certification/registration as an employee of FCBDD. Each of those applications for renewal posed questions to appellant about his criminal past. The forms used in 1996 and 2000 asked:

> Have you ever been convicted of a felony or a misdemeanor (other than a minor traffic offense)?
>
> You must answer this section even if the record of your conviction(s) has been sealed/expunged. (If yes, use a separate sheet of paper to describe the conviction(s), state when and where the conviction(s) occurred, and attach a copy of the criminal background check from the Ohio Bureau of Criminal Identification and Investigation. In addition, if you have not been a resident of the state of Ohio for the past five (5) years, please also attach a copy of your FBI background check.)
>
> Yes ☐          No ☐

(Emphasis sic.) In both 1996 and 2000, appellant checked the box next to "No."  The form appellant completed in 2004 posed the same question somewhat differently:

> Have you ever been convicted of any felony or misdemeanor (other than a minor traffic offense)? You must answer this question, even if the record of your conviction(s) has been sealed or expunged by a court of law. If you answer "Yes," use a separate sheet of paper to provide information regarding the date, the location (city, county, and state), and a description of the event leading to the conviction, and nature of the offense. If the conviction has been sealed or expunged, also provide information regarding the sealing or expungement. Attach a copy of the criminal background check from the Ohio Bureau of Criminal Identification and Investigation (BCII). In addition, if you have not been a resident of the state of Ohio for the past five years, please attach a copy of the criminal background check from the Federal Bureau of Investigation.
>
> Yes ☐          No ☐

Again, appellant checked the box associated with "No." Finally, the form appellant completed in 2008 asked:

> Have you ever been convicted of any felony or misdemeanor (other than a minor traffic offense)?
>
> You must answer this question, even if the record of your conviction(s) has been sealed or expunged by a court of law and regardless of whether or not the conviction appears on a criminal background check. If you answer "Yes," use a separate sheet of paper to provide a detailed description of the nature of the offense including the name of the conviction, the date, the location (i.e., city, county, and state), and an explanation of the event leading to the conviction. If the conviction has been sealed or expunged, also provide detailed information regarding the sealing or expungement. Attach a copy of the criminal background check from the Ohio Bureau of Criminal Identification and Investigation (BCII). In addition, if you have lived outside of the state of Ohio during the past five years, attach a copy of the criminal background check from the Federal Bureau of Investigation.
>
> Yes ☐          No ☐

Once again, appellant checked the box corresponding with "No."

{¶ 5}   In 2013, FCBDD performed a criminal record check on all its employees and learned of appellant's sealed conviction. Following notice and a pre-disciplinary hearing, effective October 4, 2013, appellant was removed from his position as training specialist. The stated reason was:

> Dishonesty and other failure of good behavior, i.e., you misrepresented your past criminal record on the application for employment and on each of four applications for certification/registration required for your position.

{¶ 6}   Appellant timely appealed to the State Personnel Board of Review ("SPBR"). The administrative law judge decided the case on written briefs, stipulated facts, and written exhibits. On August 8, 2014, the administrative law judge recommended to SPBR that appellant's removal from employment be affirmed. She recommended that appellant's failure to disclose the sealed conviction on his initial application, which had not requested information per se about sealed convictions, be found reasonable by SPBR.

However, she recommended that appellant's "No" answer to the questions on his 1996, 2000, 2004, and 2008 renewal applications be found unreasonable, particularly because appellant took no steps to verify his understanding of his privilege to decline to disclose sealed convictions when directly asked. Finally, she concluded and recommended that SPBR find that removal from employment was a reasonable disciplinary response.

{¶ 7} On August 25, 2014, appellant filed objections to the recommendation. On October 9, 2014, over the objections of appellant, but without written discussion or analysis, SPBR adopted the recommendation of the administrative law judge and affirmed appellant's removal from employment with FCBDD. Appellant then filed an appeal with the Franklin County Court of Common Pleas on October 21, 2014.

{¶ 8} In the court of common pleas proceedings, the parties again agreed on all relevant facts and briefed the law. On February 2, 2015, the common pleas court affirmed the ruling of SPBR, finding the order of SPBR to be supported by reliable, probative, and substantial evidence and in accordance with the law. Appellant submitted a timely notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellant raises the following assignment of error for our review:

> The trial court erred by permitting the State Personnel Board of Review and the Franklin County Board of Developmental Disabilities to act in contravention of Ohio's expungement law and the R.C. 2953.32 court order that granted Appellant's expungement.

## III. DISCUSSION

### A. Standard of Review

{¶ 10} When hearing an appeal from an agency decision, a court of common pleas "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M). "To be reliable, the evidence must be dependable, i.e., that there is a reasonable probability that the evidence is true." *Tres Amigos, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 14AP-309, 2014-Ohio-5047, ¶ 6, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). "To be

probative, the evidence must tend to prove the issue in question." *Id.* "To be substantial, the evidence must have some weight, i.e., it must have importance and value." *Id.*

{¶ 11} "On appeal to an appellate court, the standard of review is even more limited." *Tres Amigos* at ¶ 8. We are to "determine only if the trial court has abused its discretion * * *.  Absent an abuse of discretion on the part of the trial court, [we] may not substitute [our] judgment for those of the * * * board or a trial court. Instead, [we] must affirm the trial court's judgment." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992); *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988). However, an appellate court has plenary review of "purely legal questions" raised in an administrative appeal. *Tres Amigos.* Because the facts are undisputed in this case, our review is only of issues of law and the application of law to fact. Accordingly, our review of the contested issues in this case shall be de novo. *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 44 (10th Dist.); *see also Tres Amigos.*

### B. Assignment of Error

{¶ 12} Under his assignment of error, appellant generally contends that, because his conviction was sealed under R.C. 2953.32, he could not legally be terminated from his position at FCBDD for reasons stemming from his failure to disclose his conviction on his initial application and four subsequent certification renewals.  We disagree.

{¶ 13} The stated reason for firing appellant was:

> Dishonesty and other failure of good behavior, i.e., you misrepresented your past criminal record on the application for employment and on each of four applications for certification/registration required for your position.

Appellant argues that he was not dishonest for treating his sealed conviction as if it had not occurred, but, rather, his " 'no' answers were true by virtue of his R.C. 2953.32 sealing order." (Appellant's Brief, 10.) "Dishonesty" is defined in Black's Law Dictionary as "Deceitfulness as a character trait; behavior that deceives or cheats people; untruthfulness; untrustworthiness." *Black's Law Dictionary* 568 (10th Ed.2014).

{¶ 14} Appellant cites to *Ohio State Bd. of Pharmacy v. Friendly Drugs*, 27 Ohio App.3d 32 (8th Dist.1985) for the proposition that answering "no" to an employment application is not dishonest where the conviction was sealed prior to filing the application. However, *Friendly* is easily distinguishable on its facts. The court in *Friendly* reviewed a pharmacy board decision and sanctions particular to that case, and only made express determinations regarding a pharmacist who had not yet sealed his conviction and regarding the company. Furthermore, the language of the question posed to the pharmacists did not include language instructing the applicant on whether a sealed conviction should be disclosed. Therefore, *Friendly* is not instructive in this matter.

{¶ 15} It is true that, when a court seals records of a conviction pursuant to R.C. 2953.31 and 2953.32:

> The proceedings in the case that pertain to the conviction * * * shall be considered not to have occurred and the conviction * * * of the person who is the subject of the proceedings shall be sealed * * *.

R.C. 2953.32(C)(2).

{¶ 16} However, the same statute makes clear that the history of conviction does not literally vanish, but is accessible in a variety of specific situations. *See, e.g.,* R.C. 2953.32(D). The order sealing appellant's conviction reflects this dynamic, specifying that, while the proceedings in the case were deemed not to have occurred, information regarding the conviction would nonetheless be accessible for "specific uses and by the officials set forth" by statute. (Stipulations, 2.) As such, appellant was on notice that the sealing of his conviction was not absolute.

{¶ 17} Further, even if appellant believed sealing of his conviction entitled him to answer that he did not have a conviction initially, a belief that was reinforced by a history of "no" answers unchallenged by criminal record check results, the express language of the 2008 certification renewal called for disclosure of sealed records of a conviction even if the conviction had not appeared on criminal record checks. Therefore, appellant's decision to answer "no" to the 2008 certification renewal in the face of clear language calling for him to disclose his sealed conviction regardless of criminal check results was plainly dishonest.

{¶ 18} Thus, the issue becomes whether appellant's dishonesty should be excused under the circumstances and as a matter of law. To this point, appellant "does not * * * contend that the ODDD [Ohio Department of Developmental Disabilities] and FCBDD lacked statutory authority to question him about his sealed conviction." (Appellant's Brief, 24.) Rather, appellant contends that FCBDD could not lawfully require him to disclose his sealed conviction on a public record and in a question form which, in violation of sealing statutes, does not bear a direct and substantial relationship to the position for which he was considered.

{¶ 19} Appellant's public record argument is premised on the conclusion that all information in the application and the certification renewals is public record under R.C. 149.43. We note that appellant took the opposite position in pursuing his motion in limine, arguing "[p]er R.C. 5123.081(I)(1)(i) the record and information derived therefrom are not public records."(Motion in Limine, 1.)

{¶ 20} R.C. 5123.081(I)(1) provides that criminal record checks for the Department of Developmental Disabilities ("DDD") are not a public record for the purposes of R.C. 149.43, and may not be made available to any person other than those designated on a finite list including, in relevant part, the applicant or employee, the entity that requested the report, county board that requested the report, and courts and individuals involved in a case dealing with the denial of employment to the applicant or employee or the denial, suspension, or revocation of a certificate. *See also* Ohio Adm.Code 5123:2-2-02. Further, R.C. 149.43(A)(1)(v) excludes from the definition of public records those records for which release would be "prohibited by state or federal law," noting that R.C. 2953.35 criminalizes and prohibits disclosure of sealed records by state or political subdivision officers or employees absent special circumstances.[2]

{¶ 21} When an employment application submitted to and reviewed by DDD contains sealed records or information regarding sealed convictions, the record and information regarding the sealed convictions are not part of the public record and cannot be released absent special circumstances of the kind set forth in the sealing statutes. *See*

---

[2] This exclusion also existed at the time appellant applied in April 1995 and has existed continuously since. At the time appellant applied, however, the exclusion was found in R.C. 149.43(A)(1) rather than its current placement in R.C. 149.43(A)(1)(v). The prohibition on the release of records found in R.C. 2953.35 also existed at the relevant times.

R.C. 5123.081(I)(1) and (C);   R.C. 2953.35; and 149.43(A)(1)(v). *See also* R.C. 3319.292 (deeming, in the public education context, "[a]ny questions regarding a record of a conviction * * * that has been sealed or expunged and the responses of the applicant to such questions [to] not be a public record under section 149.43 of the Revised Code.")

{¶ 22} This places a responsibility on any agency seeking sealed records to comply with all laws governing the maintenance, security, storage, and release or non-release of such records. *See, e.g.,* R.C. 2953.32; 2953.33; 2953.35; 2953.53; 2953.55; 2953.58; and 2953.60. We note that FCBDD has a policy in place to review public records for information prohibited by statute from disclosure, and to redact that information prior to disclosure. (FCBDD Policy Manual, Section 11.32(g).) This policy was in place prior to appellant completing his 2008 certification renewal. Considering all of the above, we find that appellant was not excused from truthfully answering the 2008 certification renewal due to issues related to the application as a public record.

{¶ 23} Finally, the breadth of the conviction disclosure questions on the applications likewise did not excuse appellant from disclosing his particular sealed conviction. Under R.C. 2953.33(A), an order to seal a person's record of conviction, "restores the person who is the subject of the order to all rights and privileges not otherwise restored by termination of the sentence or community control sanction or by final release on parole or post-release control." However, Ohio law generally permits that person to be asked about that sealed conviction "[i]n any application for employment, license, or other right or privilege, any appearance as a witness, or any other inquiry * * * [if] the question bears a direct and substantial relationship to the position for which the person is being considered."[3]  R.C. 2953.33(B)(1).

{¶ 24} R.C. 5123.04(B) and 5123.1610(C) and (J) empower FCBDD to adopt appropriate rules, while R.C. 5123.081(A)(4) and 109.572(A)(3)(a through e) list and define, by statute, "disqualifying offenses."[4]  The FCBDD adopted rules on the subject of disqualifying offenses by reference to the statutory definitions in, as relevant to this case,

---

[3] Exceptions exist that are not applicable to this case. For example, the State Board of Education and the Department of Education relieved of ensuring any employment question regarding an applicant's potential sealed convictions "bears a direct and substantial relationship to the position for which the person is being considered" by statute. R.C. 2953.33(B)(1); 3319.292.

[4] Prior to Ohio H.B. No. 487, disqualifying offenses were defined by statute in R.C. 5126.28. 2011 Am.Sub.H.B. No. 487 (repealing R.C. 5126.28).

Ohio Adm.Code 5123:2-2-02(E); 5123:2-5-03(H)(2)(b), and 5123:2-5-04(B)(2). By definition, we conclude that a "disqualifying offense" is one that will bear a "direct and substantial relationship" to the position sought.

{¶ 25} R.C. 5123.081(A)(4) and Ohio Adm.Code 5123:2-5-04(B) define a disqualifying offense in this context as "any of the offenses listed or described [in R.C. 109.572(A)(3)(a) through (e)]," the statute governing criminal record checks by the state attorney general. R.C. 109.572(A)(3)(a) lists a number of specific statutory violations, while R.C. 109.572(A)(3)(e) describes "[a] violation of an existing or former municipal ordinance or law of this state, any other state, or the United States that is substantially equivalent to any of the offenses listed in divisions (A)(3)(a) to (d)." Furthermore, "[a]pplicants for or holders of registration or certification shall disclose a conviction for a disqualifying offense, *including a conviction that has been sealed.*" (Emphasis added.) Ohio Adm.Code 5123:2-5-04(D).

{¶ 26} Here, the questions framed by FCBDD on the application may potentially present a disclosure problem for individuals with criminal records that are sealed, but not clearly "disqualifying offenses" under R.C. 5123.081(A)(4). However, appellant is not such an individual. Appellant stipulated that his sealed conviction is for a violation of one of the statutes specifically listed in R.C. 109.572(A)(3)(a), and that offense alone is at issue in this case. As such, under Ohio Adm.Code 5123:2-5-04(D), appellant had a duty to disclose his sealed conviction. Under these facts, and cognizant of clear statutory language indicating the importance the legislature placed on discovering and restricting the employment of applicants convicted of certain offenses in this line of work, we disagree that the broad question on the application eliminated appellant's duty to disclose his conviction.

{¶ 27} Consequently, after conducting a de novo review, we find that appellant is not excused from honestly answering questions about his sealed conviction, and that the specificity of the 2008 question combined with appellant's failed obligation to disclose his sealed conviction under Ohio Adm.Code 5123:2-5-04(D) support FCBDD's determination to terminate appellant. Therefore, under the circumstances of this case, the trial court did not err as a matter of law, and did not abuse its discretion in finding that SPBR's order was supported by reliable, probative, and substantial evidence.

{¶ 28} Accordingly, we overrule appellant's assignment of error.

## IV.  CONCLUSION

{¶ 29} Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 30} I respectfully dissent from the decision of the majority.

{¶ 31} In our de novo review of the contested issues of this case, it is incumbent on us to also consider the operation of R.C. 2953.31 and 2953.32, the statutes that empowered the records of plaintiff-appellant Michael Gyugo's prior criminal conviction to be sealed. When a court seals records of a conviction pursuant to R.C. 2953.31 and 2953.32:

> The proceedings in the case that pertain to the conviction * * * shall be considered not to have occurred and the conviction * * * of the person who is the subject of the proceedings shall be sealed, except that upon conviction of a subsequent offense, the sealed record of prior conviction * * * may be considered by the court in determining the sentence or other appropriate disposition, including the relief provided for in sections 2953.31 to 2953.33 of the Revised Code.

R.C. 2953.32(C)(2).  Moreover:

> In any application for employment, license, or other right or privilege, any appearance as a witness, or any other inquiry, except as provided in division (E) of section 2953.32 and in section 3319.292 of the Revised Code * * * a person may be questioned only with respect to convictions not sealed * * * unless the question bears a direct and substantial relationship to the position for which the person is being considered.

R.C. 2953.33(B)(1). A person may only be asked about a sealed conviction in an employment or licensing context if "the question bears a direct and substantial relationship to the position for which the person is being considered." R.C. 2953.33(B)(1). The State Board of Education and the Ohio Department of Education are exempted by statute, presumably because licensees work directly with minors, from the need to "assert

or demonstrate that its questioning with respect to the offense bears a direct and substantial relationship to the issuance or renewal of the license or to the position in which the applicant will work under the license." R.C. 3319.292; R.C. 2953.33(B)(1). There is no similar statutory provision that would relieve Franklin County Board of Developmental Disabilities ("FCBDD") of this limit.

{¶ 32} Despite this, FCBDD posits that the Ohio Administrative Code lists a number of offenses that disqualify an individual from holding the position Gyugo held, either completely or for some window of time. FCBDD argues that Ohio Adm.Code 5123:2-5-04(D) obligated Gyugo to disclose his disqualifying sealed conviction when asked, and that the questions on Gyugo's applications were not too broad in seeking sealed records of any and all convictions. Ohio Adm.Code 5123:2-5-04(D).

{¶ 33} Gyugo argues in response that the disclosures FCBDD rules require, violate the letter and spirit of laws on sealing records of criminal convictions and arrests and are invalid. No agency may promulgate rules that conflict with statutes. If an agency does, such rules are invalid. *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Admr., Ohio Bur. of Emp. Servs.*, 21 Ohio St.3d 5, 10 (1986).

{¶ 34} R.C. 5123.04(B) and 5123.1610(C) and (J) empower the FCBDD to adopt appropriate rules, while R.C. 5123.081(A)(4) and 109.572(A)(3)(a) through (e) list and define, *by statute,* disqualifying offenses.[5] FCBDD properly adopted rules on the subject of disqualifying offenses by reference to the statutory definitions in, as relevant to this case, Ohio Adm.Code 5123:2-2-02(E), 5123:2-5-03(H)(2)(b), and 5123:2-5-04(B)(2). By definition, a "disqualifying offense" is one that will bear a "direct and substantial relationship" to the position sought. Therefore, FCBDD was within its statutory rule-making authority to create Ohio Adm.Code 5123:2-5-04(D), requiring that "Applicants for or holders of registration or certification shall disclose a conviction for a *disqualifying offense*, including a conviction that has been sealed." (Emphasis added.) Ohio Adm.Code 5123:2-5-04(D). It was incumbent on FCBDD to specify in its application, however, the particular disqualifying offenses for which disclosure was required. FCBDD did not do this in any instance. Instead, it asked for felonies and misdemeanors in

---

[5] As noted by the majority, prior to Ohio H.B. No. 487, disqualifying offenses were defined by statute in R.C. 5126.28. 2011 Am.Sub.H.B. No. 487 (repealing R.C. 5126.28).

general. In such a case, an individual whose criminal records have been sealed and which involved both non-relevant and disqualifying offenses would be impermissibly required to disclose records exempt from disclosure. While FCBDD's rules are consistent with their authorizing statutes, FCBDD's application forms did not follow its rules. The questions FCBDD asked further violated R.C. 2953.33(B)(1) in that they purported to require Gyugo to disclose "any felony or misdemeanor" even if the conviction had been sealed, without regard to whether it was a "disqualifying offense" or bore a "direct and substantial relationship" to the position Gyugo sought.

{¶ 35} FCBDD argues that "catch-all" provisions in the statutes and rules defining "disqualifying offenses" permit the broad question asked. (Appellee's Brief, 15-16.) However, the modern version of the "catch-all" provisions to which the FCBDD refers does not, in fact, catch all. Rather, they only catch former or similar, other state law violations. R.C. 109.572(A)(3)(e) requires disclosure generally and only to:

> A violation of an existing or former municipal ordinance or law of this state, any other state, or the United States that is substantially equivalent to any of the offenses listed in divisions (A)(3)(a) to (d) of this section.

Even in their former iterations (now rescinded) the "catch alls" FCBDD quotes caught only offenses that were "substantially equivalent" to *listed disqualifying offenses* and those crimes that bore "a direct and substantial relationship to the duties and responsibilities of the position being filled." (Appellee's Brief, 15-16.)  Unlike the State Board of Education and the Ohio Department of Education, FCBDD is not exempted by statute from the need to "assert or demonstrate that its questioning with respect to the offense bears a direct and substantial relationship to the issuance or renewal of the license or to the position in which the applicant will work under the license." R.C. 3319.292; R.C. 2953.33(B)(1). FCBDD did not have the right to ask for Gyugo's sealed records without regard to whether they were disqualifying offenses or whether they bore a direct and substantial relationship to the position or license. At each juncture it asked the questions, FCBDD's questions were outside the scope of the rule that would purportedly have authorized them. Accordingly, I would sustain Gyugo's sole assignment of error.

{¶ 36} Gyugo argues that, even if FCBDD had asked a proper question, by forcing him to disclose sealed records in a public application, FCBDD is undermining the purpose

of the sealing statutes, because forcing such public disclosure is tantamount to unsealing. (Appellant's Brief, 7-9, 25-27.) I would not reach this question, since I would sustain Gyugo's assignment of error. R.C. 149.43(A)(1)(v) excludes from the definition of public records those records for which release would be "prohibited by state or federal law," noting that R.C. 2953.35 criminalizes and prohibits disclosure of sealed records by state or political subdivision officers or employees absent special circumstances.[6] Thus, when an application contains sealed records or materials regarding sealed convictions, it is no longer a public record and cannot be released absent special circumstances of the kind set forth in the sealing statutes. *See* R.C. 2953.35; R.C. 149.43(A)(1)(v). A requirement to disclose sealed records in an application removes that application from being a public record once sealed records are obtained and included therein. This places a responsibility on any agency seeking sealed records to comply with all laws governing the maintenance, security, storage, and release or non-release of such records. *See, e.g.,* R.C. 2953.32; R.C. 2953.33; R.C. 2953.35; R.C. 2953.53; R.C. 2953.55; R.C. 2953.58; and 2953.60. The availability of some records but not others for the same type of application could raise suspicion as to the underlying reason for denying the release of such records, but that is a problem inherent in the statute, and this court can only note but not remedy it.

{¶ 37} Finally, Gyugo argues that it was reasonable for him to have relied on the sealing statutes and the language of the sealing order that proceedings in the criminal cases for which records were sealed were ordered by the court, consistent with the language in R.C. 2953.32(C)(2), "not to have occurred." Gyugo asserts that it was unjust to fire him for "dishonesty" when, based on an objectively reasonable basis, he claimed not to have any convictions. (Appellant's Brief, 20.) I agree.

---

[6] As the majority has noted, this exclusion also existed at the time Gyugo applied in April 1995 and has existed continuously since. At the time Gyugo applied, however, the exclusion was found in R.C. 149.43(A)(1) rather than its current placement in 149.43(A)(1)(v). The prohibition on the release of records found in R.C. 2953.35 also existed at the relevant times.

**{¶ 38}** The stated reason for firing Gyugo was:

> Dishonesty and other failure of good behavior, i.e., you misrepresented your past criminal record on the application for employment and on each of four applications for certification/registration required for your position.

(Mar. 5, 2014 Stipulated Facts and Joint Exhibits, 1.) "Dishonesty" is defined in Black's Law Dictionary as "Deceitfulness as a character trait; behavior that deceives or cheats people; untruthfulness; untrustworthiness." *Black's Law Dictionary* 568 (10th Ed.2014). "Deceitfulness" is defined in the Oxford English Dictionary in relation to "deceitful" which, in turn, is defined as being full of deceit. *Oxford English Dictionary*, www.oed.com (OED online Ed., Sept. 2015). According to these sources, at the core of "dishonesty" lies deceit, which is defined in relevant part as "concealment of the truth in order to mislead." *Oxford.* Courts in other jurisdictions have closely examined the nature of dishonesty and how to measure it. The Lord Chief Justice of England, Lord Lane, has said:

> [A] jury must first of all decide whether according to the ordinary standards of reasonable and honest people what was done was dishonest. If it was not dishonest by those standards, that is the end of the matter * * *. If it was dishonest by those standards, then the jury must consider whether the defendant himself must have realised that what he was doing was by those standards dishonest.

*Regina v. Ghosh*, 1982 QB 1053, (Eng. C.A.). I would draw persuasively from this apt description in which overt actions to conceal the truth are involved.

**{¶ 39}** Gyugo was faced with unlawfully broad and formulaic questions about his sealed criminal background. Viewing Gyugo's conduct objectively, I cannot say as a matter of law that a reasonable person would have considered it dishonest, when faced with such overbroad questions about sealed records, to rely on statements of a court (and statute) that sealed criminal convictions are to be treated as if they had not occurred. *See* R.C. 2953.32(C)(2). Gyugo answered "no" to a question asking if he had a conviction at the time he was hired in 1995 and was told a background check would be run. When the first "no" answer on the initial application was not challenged (even though Gyugo had been informed that a background check would be conducted) Gyugo likely reasonably concluded that he had been correct in not disclosing his sealed conviction, informing future conduct. There was and had been no consequence for his allegedly "false" answers.

Moreover, there is nothing in the record to suggest that Gyugo was anything other than an excellent employee during his 18 years of employment. Accordingly, I would find that Gyugo's firing for dishonesty lacked the requisite reliable, substantial, and probative evidence to support it, and based on the agreed facts at both the agency and trial court review levels, was contrary to law. It was unreasonable for FCBDD to have fired him.

{¶ 40} I would hold that the trial court erred when it failed to determine that FCBDD's question was impermissibly broad. *See Leslie v. Ohio Dept. of Dev.,* 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 44 (10th Dist.). Based on a record of agreed to facts, I would find that the trial court further erred as a matter of law in affirming State Personnel Board of Review's finding that Gyugo was "dishonest" when applying and re-registering for his job at FCBDD. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993). Accordingly, I would sustain Gyugo's sole assignment of error and reverse the judgment of the Franklin County Court of Common Pleas for the reasons stated in this dissent with an order that Gyugo be reinstated to his position with back pay with interest from the date of his last day of employment with FCBDD.

_____