[Cite as *Carnes v. Dept. of Taxation*, 2019-Ohio-3244.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jeffrey Carnes, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 18AP-777<br>(C.P.C. No. 17CVF05-4443) |
| Ohio Department of Taxation, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

# D E C I S I O N

## Rendered on August 13, 2019

**On brief:** *Haynes Kessler Myers & Postalakis, Inc.*, and *Marc E. Myers*, for appellant. **Argued:** *Marc E. Myers*.

**On brief:** *Dave Yost*, Attorney General, and *Matthew J. Karam*, for appellee. **Argued:** *Matthew J. Karam*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Appellant, Jeffrey Carnes, appeals a judgment of the Franklin County Court of Common Pleas affirming the order of the State Personnel Board of Review ("Board") that affirmed Carnes' involuntary disability separation. For the following reasons, we affirm that judgment.

{¶ 2} In July 2013, Carnes was employed as an Information Technologist 2 for appellee, the Ohio Department of Taxation ("ODT"). Carnes' essential job duties included programming databases, developing web pages, and troubleshooting IT problems. On July 13, 2013, Carnes' supervisor met with Carnes to discuss the goals and expectations for

Carnes' job performance in the upcoming year. During the meeting, Carnes stated that he disagreed with each goal, but would only say, "It is what it is," when asked to explain how and why he disagreed. (July 31, 2013 Letter from Charles Kumpar to J. Nick Marzella.)

{¶ 3} Subsequently, Charles Kumpar, the ODT labor relations administrator, questioned Carnes about his behavior during the meeting. According to Kumpar, Carnes displayed difficulty in answering even basic questions. During conversation, Carnes would reverse his answers midsentence, contradict himself, and stop responding and gaze silently at the ceiling until re-engaged.

{¶ 4} Concerned that Carnes' mental health was hindering his job performance, Kumpar arranged for an evaluation of Carnes' psychological fitness for duty. J. Nick Marzella, a psychologist, evaluated Carnes on August 5, 2013. Marzella administered to Carnes two psychological tests: the Minnesota Multiphasic Personality Inventory-2 and the Millon Clinical Multiaxial Inventory-II. Marzella also conducted an interview of Carnes to assess his psychological status.

{¶ 5} According to Marzella, Carnes was anxious throughout the interview. Marzella reported that Carnes' "thoughts were scattered and at times tangential. He was obstructive and non-revealing, subsequently showing little insight and poor judgment." (Aug. 6, 2013 Psychological Fitness for Duty Evaluation at 4.)

{¶ 6} Using the multiaxial approach to diagnosing set forth in the Diagnostic and Statistical Manual of Mental Disorders IV ("DSM-IV"), Marzella did not diagnose Carnes with any Axis I clinical disorders. However, under Axis II, Marzella diagnosed Carnes with an obsessive-compulsive personality disorder with histrionic and narcissistic personality features.

{¶ 7} Additionally, Marzella opined:

> [Carnes'] obsessive-compulsive personality disorder will exacerbate in times of stress. His tendency to be overly concerned with irrelevancies fueled with his denial of personal issues and adequacy will make it difficult for him to stay on task with any degree of persistence and pace. Further, Mr. Carnes is obstructive and recalcitrant with regard to revealing information. Such behavior in the workplace is disruptive and will likely prevent him from effectively performing his job functions in an efficient and effective manner.
>
> * * *

> [Carnes'] ability to engage in rational thought that is goal directive and relevant is impaired. * * * There is every indication Mr. Carnes is sufficiently unreliable for full and unrestricted duty at this time. While his conflicts in the workplace need address[ing], he lacks the insight and judgment to rationally engage in a cogent process needed to resolve these issues.

*Id.* at 5-6. Given Carnes' mental state, Marzella concluded that, "based on a reasonable degree of psychological certainty, [Carnes] does not currently offer adequate cognitive and emotional faculties to perform the essential tasks and duties of his position as an Informational Technologist 2 for the Ohio Department of Taxation." *Id.* at 6.

{¶ 8} As a result of Marzella's conclusion, ODT placed Carnes on involuntary disability separation pursuant to Ohio Adm.Code 123:1-30-01. Carnes' involuntary disability separation commenced on August 26, 2013.

{¶ 9} Carnes appealed ODT's decision to the Board. On June 11, 2014, the parties appeared before an administrative law judge for a hearing on Carnes' appeal. At the hearing, ODT called Kumpar and Marzella as witnesses. Marzella testified that, during his interview of Carnes, Carnes "was pretty obstructive and recalcitrant and evasive in terms of revealing information, didn't really want to explore the reasons he was there or why he thought he was there, and [Marzella] had a hard time getting straight answers from him." (June 11, 2014 Tr. at 63.) Marzella also stated that "sometimes [Carnes'] answers were odd and tangential in nature, had nothing to do with the question. And sometimes [he] felt [Carnes] got really anxious and * * * just couldn't really address the content of what [Marzella] was asking." *Id.* Ultimately, Marzella opined that he "felt that [Carnes] wanted to work, but [he] didn't think [Carnes] had the * * * ability to perform adequately" based on Carnes obstructiveness and inability to directly respond to the questions asked of him. *Id.* at 73.

{¶ 10} To rebut Marzella's expert report and testimony, Carnes introduced the report and testimony of George Schulz, a psychologist who evaluated Carnes' psychological fitness for duty in November 2013. Like Marzella, Schulz administered to Carnes two psychological tests: the Minnesota Multiphasic Personality Inventory-2 and the Emotional Quotient Inventory 2.0. Schulz also conducted a clinical interview of Carnes. According to Schulz, during the interview, Carnes was cooperative and showed no symptoms of anxiety.

Carnes spoke in a coherent and organized manner, and he showed no "fragmentation of thought or loosening of associations." (Dec. 5, 2013 Psychological Evaluation – Fitness for Duty Evaluation at 6.)

{¶ 11} In his report, Schulz concluded that Carnes did not "evidence any presence of a significant mental disorder" or "present any symptoms of depression, anxiety, mood disorder, psychosis, a cognitive disorder, alcohol/substance disorder, or personality disorder, or impulse control disorder." *Id.* at 11. Schulz, therefore, diagnosed Carnes with no Axis I or Axis II disorders. Schulz opined that Carnes was mentally capable of understanding and applying instructions in the work setting, completing the essential tasks and duties of his position, and responding appropriately to coworkers, supervisors, and work pressures. At the administrative hearing, Schulz reiterated his opinion that Carnes was capable of performing his job duties. Schulz also stated that he believed he would have reached the same conclusion he had evaluated Carnes in August, and not November, of 2013.

{¶ 12} In addition to Schulz's report and testimony, Carnes also introduced into evidence the report of Charles S. Burke, a psychiatrist who reviewed Marzella's report. Burke became involved because Carnes applied for disability leave benefits with the Department of Administrative Services ("DAS") and submitted Marzella's report as evidence of his mental health condition. DAS requested that Burke, an independent third-party physician, assess whether Marzella's report supported an award of disability leave benefits.

{¶ 13} Burke found no evidence that Carnes suffered from a disabling psychiatric condition. In his report, Burke stated:

> [T]he information reviewed does not support that Mr. Carnes suffers from any Axis I psychiatric or psychological disorder. It is noted that evaluation has shown that Mr. Carnes does have a history of maladaptive personality features and defense mechanisms that are likely to be currently interfering with the performance of his job. It should be noted that these are lifelong patterns and are not considered a specific illness. There is no indication presented that Mr. Carnes is cognitively or emotionally impaired by any emotional illness to perform his job.

(Oct. 18, 2013 Letter from Burke to DAS.)

{¶ 14} Based on Burke's opinion, DAS found that Carnes had not substantiated the cause, nature, and extent of a disabling illness, injury, or condition that prevented Carnes from performing his job. Thus, DAS denied Carnes' application for disability leave benefits.

{¶ 15} After the close of the hearing, the administrative law judge issued a recommendation that the Board affirm ODT's decision to place Carnes on involuntary disability leave. The Board adopted that recommendation, and Carnes then appealed the Board's order to the trial court pursuant to R.C. 119.12. The trial court reversed the Board's order and remanded the matter to the Board because the administrative law judge had not considered all Carnes' evidence. We affirmed the trial court's judgment on appeal. *Carnes v. Ohio Dept. of Taxation*, 10th Dist. No. 15AP-971, 2016-Ohio-3428.

{¶ 16} On remand, the administrative law judge heard further argument from both parties. In a second report and recommendation, the administrative law judge again recommended that the Board affirm ODT's decision. The Board adopted the recommendation and affirmed Carnes' involuntary disability separation in an order issued May 2, 2017.

{¶ 17} Carnes appealed the May 2, 2017 order to the trial court. In a decision and entry dated September 13, 2018, the trial court affirmed the Board's order.

{¶ 18} Carnes now appeals the September 13, 2018 judgment, and he assigns the following errors:

> 1. The Court of Common Pleas abused its discretion when it found that the Order of the State Personnel Board of Review affirming Appellant Jeffrey Carnes' Involuntary Disability Separation was supported by reliable, probative, and substantial evidence and in accordance with law.
>
> 2. The Court of Common Pleas erred as a matter of law when it concluded that the medical standard of review to receive Disability Leave Benefits from the Ohio Department of Administrative Services differed from the medical standard of review to place a State of Ohio classified employee on Involuntary Disability Separation.

{¶ 19} Carnes appealed the Board's order to the common pleas court under R.C. 119.12. Pursuant to R.C. 119.12(M), when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law.

To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). To be "probative," evidence must be relevant or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.*

{¶ 20} In conducting a review of the administrative record, a common pleas court must "appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). During its appraisal of the evidence, a common pleas court must give due deference to the administrative resolution of evidentiary conflicts, but the findings of the agency are not conclusive. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470 (1993). Due deference is owed to an agency's fact-finding "[w]hen the evidence consists of conflicting testimony of approximately equal weight" because the administrative body, "as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). However, " '[w]here the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order.' " *Ohio Historical Soc.* at 470, quoting *Conrad* at 111.

{¶ 21} An appellate court's review of an administrative order is more limited than that of a common pleas court reviewing the same order. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 41. Instead of appraising the weight of the evidence, an appellate court determines whether the common pleas court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Absent an abuse of discretion, an appellate court must affirm the common plea court's judgment, even if the appellate court would have arrived at a different conclusion than that of the common pleas court. *Bartchy* at ¶ 42.

{¶ 22} In determining whether an administrative order is in accordance with law, a common pleas court must undertake its reviewing task completely independently. *Ohio Historical Soc.* at 471. Likewise, an appellate court's review on issues of law is plenary. *Bartchy* at ¶ 43.

{¶ 23} Here, by his first assignment of error, Carnes argues that the trial court improperly reviewed the evidence regarding whether he had met the criteria for involuntary disability separation in August 2013. Carnes asserts that: (1) the trial court wrongly accepted the Board's resolution of evidentiary conflicts as conclusive, and (2) the trial court erred in considering Kumpar's description of Carnes' behavior when determining whether Carnes suffered from a disabling condition.

{¶ 24} A state employer may impose an involuntary disability separation when an employee "is unable to perform the essential job duties of [his or her] position due to a disabling illness, injury or condition." Ohio Adm.Code 123:1-30-01(A). Here, the Board relied on Marzella's expert opinion to conclude that, in August 2013, Carnes had a disabling condition that prevented him from performing the essential job duties of the Information Technologist 2 position.

{¶ 25} In reviewing the Board's decision, the trial court had to parse three conflicting expert opinions regarding Carnes' mental state and capabilities. Marzella diagnosed Carnes with an obsessive-compulsive personality disorder with histrionic and narcissistic personality features, and he opined that this disorder rendered Carnes unable to fulfill his job duties. Schulz diagnosed Carnes with no mental disorders, and he opined that Carnes could perform the duties of his position. Burke accepted Marzella's diagnosis of Carnes, but he opined that Carnes' personality disorder did not constitute a psychiatric illness or condition.

{¶ 26} The trial court reviewed each of the three expert reports and Marzella's and Schulz's testimony. Essentially, the trial court concluded that the Board had sound reasons for finding Marzella's opinion the most credible. The trial court rejected Burke's opinion because (1) he only conducted a paper review and did not evaluate Carnes in person, and (2) both Marzella and Schulz disagreed with Burke's opinion that a personality disorder could not constitute a disabling psychiatric condition. The trial court rejected Schulz's opinion because Schulz conducted his evaluation of Carnes in November 2013, approximately three months after ODT found Carnes disabled.

{¶ 27} On appeal, Carnes attacks the conclusion that Marzella provided the most credible and persuasive evidence regarding Carnes' mental state and job fitness. First, Carnes maintains that Marzella did not explain why he concluded that Carnes was

incapable of performing his job duties and Marzella only conducted a cursory evaluation of Carnes. Based upon our review of Marzella's report and testimony, we do not agree with Carnes' characterization of Marzella's evaluation and diagnosis of Carnes. In his report and testimony, Marzella explained his reasons for finding Carnes' personality disorder made him unfit for duty. Moreover, Marzella denied Carnes' contention that his interview of Carnes lasted only 28 minutes.

{¶ 28} Second, Carnes contends that the three-month lapse between the imposition of the involuntary disability separation and Schulz's evaluation does not matter. We do not share Carnes' assessment of the importance of the three-month gap. As the trial court recognized, the behaviors associated with Carnes' personality disorder may have abated in the three months, thus resulting in the improved evaluation of Carnes' mental health. Consequently, Marzella's evaluation, conducted two weeks before ODT imposed the involuntary disability separation, would better reflect Carnes' mental condition at the point of imposition.

{¶ 29} Finally, regardless of whether we agree with Carnes' appraisal of the evidence, none of the reasons Carnes raises for rejecting the trial court's determination would cause us to find the trial court abused its discretion. The trial court had before it conflicting evidence of approximately the same weight, and legitimate reasons existed for designating any one of the three opinions the most credible and persuasive. The trial court reviewed the Board's reasoning for relying on Marzella's opinion, and, finding that reasoning logical, the court deferred to the Board's resolution of the evidentiary conflict. The trial court, therefore, properly applied its standard of review. Moreover, the trial court did not abuse its discretion in finding Marzella's report and testimony constituted reliable, probative, and substantial evidence that supported the Board's decision.

{¶ 30} Carnes next argues that the trial court erred in considering Kumpar's description of Carnes' behavior in determining whether Carnes suffered from a disabling condition that precluded him from performing his job duties. We disagree.

{¶ 31} During the administrative hearing, the administrative law judge admitted into evidence a July 31, 2013 letter from Kumpar to Marzella. In the letter, Kumpar recounted the unusual behavior that prompted Kumpar to arrange a psychological

evaluation of Carnes. Kumpar detailed Carnes' interaction with his supervisor during the July 13, 2013 meeting, as well as Carnes' disjointed communication style.

{¶ 32} The trial court found Kumpar's description of Carnes' behavior minimally relevant because Carnes did not challenge that description. Carnes, therefore, did not dispute that, in July 2013, he appeared unable or unwilling to interact or communicate normally with his colleagues. Kumpar's depiction of Carnes' behavior corresponds with the behavior Marzella observed during his interview of Carnes. Marzella based his opinion, in part, on the information in July 31, 2013 letter and his interview of Carnes. Consequently, Kumpar's description both forms and confirms the factual basis for Marzella's opinion that Carnes could not perform his job duties due to his mental condition. We thus find no abuse of discretion in the trial court's consideration of the July 31, 2013 letter in determining whether Carnes was psychologically fit to perform his job.

{¶ 33} In sum, we reject each of the arguments Carnes raises under his first assignment of error. Accordingly, we overrule that assignment of error.

{¶ 34} By Carnes' second assignment of error, he argues that the trial court erred in concluding that the standard for placing an employee on involuntary disability separation differs from the standard for granting disability leave benefits. Review of the trial court's decision reveals that the trial court did not reach the conclusion that Carnes challenges as erroneous. Rather, the trial court recognized the correlation between the two standards when it determined that DAS' finding that Carnes did not have a disabling condition contradicted the Board's finding that Carnes suffered from just such a disability.

{¶ 35} The trial court found the divergence in the agencies' decisions troubling, but understandable. As the trial court explained, a difference in the governing procedural rules resulted in the agencies reaching different outcomes. Under Ohio Adm.Code 123:1-33-04, "[w]here a medical question is at issue," DAS must "obtain a medical opinion from an independent third party" and "the decision of the third party shall be binding." Burke, the independent third party retained by DAS, concluded that Marzella's opinion did not provide evidence that Carnes had a psychiatric disability that prevented Carnes from performing his job duties. In compliance with Ohio Adm.Code 123:1-33-04, DAS did not weigh Marzella's opinion against Burke's opinion. Rather, it simply accepted Burke's opinion as controlling and denied Carnes disability leave benefits.

{¶ 36} Unlike DAS, the Board weighed the expert opinions and found Marzella's the most credible and persuasive. Nothing in DAS' decision denying Carnes disability leave benefits prohibited the Board from reaching its decision. Accordingly, we overrule Carnes' second assignment of error.

{¶ 37} For the foregoing reasons, we overrule Carnes' two assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

_____